■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE D. BROCKWAY, Appellant. [715 NYS2d 476] —Lahtinen, J. Appeal from a judgment of the County Court of Chemung County (Buckley, J.), rendered January 26, 1998, upon a verdict convicting defendant of the crime of reckless endangerment in the first degree.

Defendant was indicted in May 1997 by a Chemung County Grand Jury on a single count of reckless endangerment in the first degree stemming from a high speed vehicle chase which occurred on May 2, 1997 throughout Chemung County. Convicted after a jury trial, defendant was sentenced as a second felony offender to an indeterminate prison sentence of 3½ to 7 years. He now appeals.

The People's case rested in large part on the testimony of State Trooper Todd Cross. Cross testified that while he was on patrol on the Olcott Road South in a 30 mile-per-hour speed zone, he encountered a vehicle traveling in the opposite direction which he clocked on his radar at 53 miles per hour. As the vehicle passed him he observed it to be a dark colored Chevrolet extended cab pickup truck with a ladder rack driven by a white male. As Cross turned his vehicle around to pursue the truck he observed that vehicle proceed through a T-intersection

without stopping at the stop sign controlling the intersection. Cross then described a 20-minute high-speed chase over several roads and streets during which the truck traveled at speeds up to 100 miles per hour. He observed the truck passing several vehicles in no passing zones, pass a vehicle while approaching the crest of a hill on a two-lane road with no visibility for oncoming traffic and failing to obey any traffic control devices.

During the course of the chase he observed the truck sideswipe a white car and continue on at about 70 miles per hour without stopping. At one point during the chase Cross pulled up beside the truck and "wedged" it to a stop in what he described as a well lit commercial area of the highway, observing the driver to be a white male with dark wavy hair wearing a long sleeve plaid shirt. No one else was in the truck. Cross then observed the driver pound on the steering wheel after which the truck backed up and went around his vehicle. The chase resumed with Cross eventually losing sight of the truck but continuing the chase by following a trail of dust clouds. Almost immediately he came upon a pickup with the same license plate and general description as the vehicle he had been following. The vehicle had been abandoned in the middle of a street with the driver's door open. The engine was warm. A search of the truck cab by Cross and State Trooper Jeff Gottschall revealed a black bag with contracts and business cards containing defendant's name. Thereafter the Troopers spoke to defendant's stepfather, who had emerged from his house very near the abandoned truck.

At 4:30 A.M. that morning, Cross and Gottschall proceeded to defendant's home but found no one there. Cross testified that defendant called the State Trooper barracks that morning and indicated that he was going to contact his attorney. In a chance encounter at the barracks on May 22, 1997, Cross saw defendant and recognized him as the driver of the pickup truck he pursued on May 2, 1997. Cross admitted he issued no traffic tickets to defendant resulting from the chase and his undated accident report of the hit and run involving the white car listed the driver of the truck as unknown.

The driver and a passenger from the white car were called as witnesses by the People, the driver describing the truck as big with ladders on both sides, maroon in color and the passenger describing the truck as dark colored and its driver as a white male. Both testified as to their fear when observing the truck bearing down on them.

Defendant did not testify. Defense witnesses included

defendant's brother-in-law David Early, the owner of the pickup truck, who testified he drove defendant home in the pickup truck on May 2, 1997 in the early evening and then left the truck at defendant's mother's home. He did not recall ever seeing defendant drive his truck. Early identified the black bag secured from the truck as belonging to defendant. He testified that he was sleeping at his home some 70 miles away at the time of the incident. Defendant also called his stepfather who testified he had never seen defendant drive Early's pickup truck. Defendant attempted to call his brother as a witness but, after an offer of proof in which his brother invoked his right not to incriminate himself, the County Court ruled that this witness could not testify.

Defendant raises several points on appeal. Initially, he argues his motion to set aside the verdict pursuant to CPL 330.30 should have been granted because the evidence against him was insufficient, and also argues that the verdict was against the weight of the evidence. Evaluation of the legal sufficiency of the evidence begins with the premise that the evidence must be viewed in the light most favorable to the People (*see, People v Harper*, 75 NY2d 313, 316). We must next determine "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]; *see, People v Williams*, 84 NY2d 925, 926; *People v Contes*, 60 NY2d 620, 621). We find the testimony of Cross who identified defendant as the driver of the pickup and described the actions of that vehicle on May 2, 1997, together with the evidence of defendant's connection to the vehicle, provide a sufficient basis for the jury's verdict. Resolution of any credibility issue contained in the testimony is the function of a jury (*see, People v Page*, 225 AD2d 831, 832-833, *lv denied* 88 NY2d 883), who is free to accept or reject all or part of any testimony (*see, People v Rose*, 215 AD2d 875, 876, *lv denied* 86 NY2d 801). Deference is to be accorded a jury's determination on those issues (*see, People v Bleakley, supra,* at 495; *People v Pugh*, 246 AD2d 679, 681, *lv denied* 91 NY2d 976).

In determining whether a verdict is against the weight of the evidence we must independently review the trial evidence (*see, People v White*, 261 AD2d 653, 656, *lv denied* 93 NY2d 1029) and if a different verdict would not have been unreasonable, must " 'weigh the relative probative force of conflicting

testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley, supra,* at 495, quoting *People ex rel. MacCracken v Miller,* 291 NY 55, 62; *see,* CPL 470.20 [2]) and upon that review may set aside the verdict if we find the jury has failed to accord the evidence its proper weight (*see, People v Bleakley, supra,* at 495). We do not find the jury's verdict against the weight of the evidence, it obviously having resolved the credibility of the testimony regarding the identification of defendant in favor of the People. We find no reason to disturb that determination.

Defendant next argues that County Court denied him his due process right to a fair trial by its *Sandoval* (*see, People v Sandoval,* 34 NY2d 371) ruling which permitted the prosecution to ask defendant if he had two prior felony convictions for impeachment purposes should he elect to testify. We find County Court did not abuse its discretion in fashioning this "*Sandoval* compromise" (*People v Cooke,* 101 AD2d 983, 984 [internal quotations omitted]; *see also, People v Green,* 270 AD2d 566, *lv denied* 95 NY2d 853), as despite defendant's lengthy criminal history, the prosecution was permitted to question him about the existence of two relatively recent felony convictions but not the details of those convictions (*see, People v Noonan,* 220 AD2d 811, 813). Only if defendant denied the convictions would the door be opened for inquiry into the nature of the crimes. This ruling demonstrated a proper balancing of the probative worth of the convictions regarding defendant's credibility against the risk of unfair prejudice to him (*see, People v Williams,* 56 NY2d 236, 238-239) and cannot be said to constitute reversible error (*see, People v Mangan,* 258 AD2d 819, *lv denied* 93 NY2d 927).

Defendant next argues that County Court erred in not fashioning a sanction against the prosecution for failing to preserve the tape of the radio transmissions between Cross and his barracks during the course of the May 2, 1997 high-speed chase, claiming that this was *Rosario* material (*see, People v Rosario,* 9 NY2d 286; *see also,* CPL 240.45 [1] [a]) and that the failure to preserve it required imposition of a sanction. The record reflects that at a conference on June 30, 1997 defendant's counsel requested "an opportunity to listen to the radio transmissions allegedly taped" and at a subsequent conference on October 30, 1997 indicated that the State Police had informed him that those tapes had been destroyed. Counsel requested an adjournment for possible motions addressing that issue but the record contains no such motion nor any other request for sanctions on this issue, thus failing to preserve it

for our review (*see, People v Graves*, 85 NY2d 1024, 1027; *People v Rogelio*, 79 NY2d 843, 844; *People v Dickson*, 260 AD2d 931, 933; *lv denied* 93 NY2d 1017). We decline to exercise our discretion: and address the issue in the interest of justice (*see*, CPL 470.15). Unlike the cases cited by defendant, wherein prejudice was demonstrated due to the failure to produce *Rosario* material relating to an identification issue (*see, People v Wallace*, 76 NY2d 953; *People v Anderson*, 222 AD2d 442), no prejudice has been demonstrated here. Defendant failed to establish that Cross radioed any description of the driver of the pickup during the chase. Further, a review of defendant's written discovery demands reveals the only tapes sought were those to be introduced at trial, neither demand containing the statutory language of CPL 240.45 (1) (a).

Next, we find unavailing defendant's claim that County Court's refusal to permit his brother to testify deprived him of his constitutional right to present a defense (*see, e.g., People v Hudy*, 73 NY2d 40, 57). Defendant called his brother as a defense witness and, after objection by the prosecution, County Court required an offer of proof of the substance of this witness's testimony. Defendant's brother continuously invoked his privilege against self-incrimination when questioned on the issue of the identity of the driver of the truck. The court ruled this witness could not testify, finding it impermissible to call a witness merely to invoke the privilege against self-incrimination and that any testimony on other collateral issues would be cumulative. We find no abuse of discretion in this ruling which reflects a balancing of the probative significance of the testimony against the possible impression upon the jurors that the witness is guilty of this crime (*see, People v Thomas*, 51 NY2d 466, 472; *People v Love*, 177 AD2d 794, *lv denied* 79 NY2d 860) and did not amount to a violation of defendant's constitutional right to present a defense requiring reversal of his conviction.

Defendant next claims the cumulative errors of defense counsel deprived him of effective assistance of counsel. He points to counsel's numerous alleged errors including failing to make a timely motion to suppress the black bag seized from the pickup by Cross, failing to file an alibi notice, failing to introduce certain photographs in evidence, failing to object to improper questions asked by the prosecution, failing to object to the admission of certain testimony which allegedly required expert opinion and failing to object to the prosecution's rebuttal witnesses.

Our examination of a claim of ineffective assistance of

counsel centers on whether defendant received "meaningful representation" (*People v Benevento*, 91 NY2d 708, 712 [internal quotations omitted]; *see, People v Wiggins*, 89 NY2d 872, 873; *People v Baldi*, 54 NY2d 137, 151; *People v Fancher*, 267 AD2d 770, *lv denied* 94 NY2d 919; *People v Foote*, 228 AD2d 720). While failure to make a particular pretrial motion (*see, People v Rivera*, 71 NY2d 705, 709) or pursue a *Rosario* claim (*see, People v Flores*, 84 NY2d 184) alone do not establish ineffective assistance of counsel, defendant argues counsel's cumulative errors deprived him of meaningful representation. Evaluating defense counsel's actions as a whole, we are persuaded defendant received meaningful representation. Discovery was conducted, a very favorable *Sandoval* ruling was obtained and the credibility of the People's witnesses on the crucial identification issue was thoroughly explored during the trial. Defendant failed to demonstrate what alibi defense might have been presented and, despite a favorable *Sandoval* ruling, did not testify in an attempt to establish such a defense. We find no merit to the claims defense counsel failed to object to the allegedly improper prosecution questions and the rebuttal witnesses they presented, there being nothing submitted in support of those claims but bald assertions of impropriety.

Defendant's remaining arguments are unfounded. County Court charged the statutory definition of "recklessly" (*see,* Penal Law § 15.05 [3]) in its charge to the jury regarding the mental state it was required to find to convict defendant of reckless endangerment in the first degree. The inclusion of the sentence referring to intoxication was not error, there being testimony in the record from Cross that during his initial inspection of the cab of the pickup operated by defendant he noticed the odor of alcoholic beverage.

Finally, defendant's sentence was within the permissible range for this class D felony and, given his criminal history, we do not find that the sentence imposed to be harsh and excessive nor do we find any circumstances warranting our modification of same (*see, People v Dolphy*, 257 AD2d 681, *lv denied* 93 NY2d 872).

Mercure, J. P., Crew III, Spain and Rose, JJ., concur. Ordered that the judgment is affirmed.