■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH AUGUST, Appellant. [822 NYS2d 334]—

Cardona, P.J. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered April 10, 2003, upon a verdict convicting defendant of the crime of burglary in the second degree.

While doing household chores one night in June 2002, the victim heard a noise in her living room. Upon investigation, she discovered an unknown male standing near her couch. After she yelled, the intruder turned, momentarily facing her, and then fled. The victim immediately called 911 and described the intruder as a white male, "about five-seven, wearing a green shirt and jeans, smelled like alcohol, had shoulder length straggly hair . . . and a beard and a mustache." John White, a police detective for the Town of Rotterdam, Schenectady County, responded to the scene and received an identical description of the intruder from the victim, which he relayed over his police radio. In the interim, a neighbor of the victim telephoned police to report that an unidentified man was walking around his home. The neighbor's description of the individual was consistent with that given by the victim. Shortly thereafter, patrolman Robert Dufek, who was positioned nearby, observed emerging from behind a house a white male with "straggly brown hair," "very unshaven," "wearing a bluish colored shirt" and blue jeans. Dufek trained his revolver on the man, later identified as defendant, and directed him to stop and drop to the ground. After Dufek was joined by other officers, defendant was handcuffed and seated against a tree. The victim was soon brought to the location and identified defendant as the intruder.

Defendant was indicted and charged with the crimes of burglary in the second degree, grand larceny in the fourth degree and petit larceny. Following a trial, defendant was found guilty of burglary in the second degree and sentenced, as a persistent violent felony offender, to a prison term of 18 years to life.

Defendant primarily contends that County Court erred in failing to suppress the victim's pretrial identification. As to his claim that the showup identification was the product of an unlawful de facto arrest (*see generally Dunaway v New York*,

442 US 200 [1979]), we need not examine the propriety of County Court's factual determination in that regard since we conclude that the police had probable cause to arrest defendant at the time he was confronted by Dufek (*see* CPL 140.10 [1] [b]; *see also People v Brnja*, 50 NY2d 366, 372 [1980]).

"Probable cause 'does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been . . . committed' by the person arrested" (*People v Shulman*, 6 NY3d 1, 25 [2005], *cert denied* 547 US —, 126 S Ct 1623 [2006], quoting *People v Bigelow*, 66 NY2d 417, 423 [1985]). Accordingly, a police officer may effect a warrantless arrest when he or she observes a suspect in close geographic and temporal proximity to the crime scene and the suspect's appearance matches a sufficiently detailed description of the perpetrator received by the officer (*see People v Terry*, 2 AD3d 977, 979 [2003], *lv denied* 2 NY3d 746 [2004]; *People v Oliver*, 191 AD2d 815, 816 [1993]; *see also People v Harmon*, 293 AD2d 303, 303-304 [2002], *lv denied* 98 NY2d 676 [2002]; *People v McKethan*, 225 AD2d 800, 800 [1996], *lv denied* 88 NY2d 938 [1996]; *People v Ward*, 182 AD2d 573, 573 [1992], *lv denied* 81 NY2d 849 [1993]).

Here, the victim twice provided a thorough description of the alleged intruder which was corroborated by the unsolicited account of a neighbor. Also significant is the fact that, within two hours of the crime, Dufek encountered defendant—who matched the intruder's description in every significant respect (*see People v Fincher [Norris] [Williams]*, 225 AD2d 900, 901 [1996], *lv denied* 88 NY2d 984, 991, 997 [1996]; *see also People v Jackson*, 282 AD2d 473, 473-474 [2001], *lv denied* 96 NY2d 863 [2001])— in the victim's suburban neighborhood. We note that all of these events transpired shortly after midnight on a weekday morning, making it highly unlikely that multiple individuals matching the intruder's description would simultaneously be present on the streets. Under these circumstances, the police had probable cause to arrest defendant.

We are also unpersuaded that the showup identification procedure was unreasonable or unduly suggestive. The evidence before County Court indicated that the showup was conducted within two hours of the crime's commission—as soon as practicable following defendant's apprehension (*see People v Boyd*, 272 AD2d 898, 899 [2000], *lv denied* 95 NY2d 850 [2000]; *People v McBride*, 242 AD2d 482, 482 [1997], *lvs denied* 91 NY2d 876 [1997], 91 NY2d 943 [1998])—and in close proximity to the victim's home, thereby satisfying the People's threshold burden

of establishing the reasonableness of the police procedure (*see generally People v Ortiz*, 90 NY2d 533, 537 [1997]). Moreover, the fact that defendant was handcuffed when viewed by the victim does not, as a matter of law, render the showup unduly suggestive (*see People v Armstrong*, 11 AD3d 721, 722 [2004], *lv denied* 4 NY3d 760 [2005]). Nor are we troubled by White's statement to the victim that the police had "a person stopped" whom they' wanted to see if she recognized, as it "merely conveyed what a witness of ordinary intelligence would have expected under the circumstances" (*People v Williams*, 15 AD3d 244, 246 [2005], *lv denied* 5 NY3d 771 [2005]).

As a corollary to his arguments regarding the showup identification, defendant contends that his conviction was founded upon legally insufficient evidence. We disagree. Inasmuch as the victim's pretrial identification of defendant was properly admitted, his identity as the intruder in the victim's home was established by the proof adduced at trial. Moreover, his intent to commit a crime within the victim's home may be inferred from his unauthorized presence therein (*see People v Armstrong, supra* at 723; *People v Love*, 307 AD2d 528, 529 [2003], *lv denied* 100 NY2d 643 [2003]). Taken together, these elements establish a prima facie case of burglary in the second degree (*see* Penal Law § 140.25; *see generally People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Zabala*, 290 AD2d 578, 578 [2002], *lv denied* 97 NY2d 735 [2002]).

We also disagree with defendant's claim that the People's failure to preserve a recording of the victim's 911 telephone call warrants reversal of his conviction (*see* CPL 240.45 [1] [a]; *see generally People v Rosario*, 9 NY2d 286 [1961], *cert denied* 368 US 866 [1961]). As an initial matter, we note that when it was revealed at trial that the 911 tape had not been preserved, defendant did not request ameliorative measures and, accordingly, he has not preserved the issue for our review (*see People v Rogelio*, 79 NY2d 843, 844 [1992]; *People v Brockway*, 277 AD2d 482, 485-486 [2000]). In any event, defendant has not established that he was prejudiced (*see generally* CPL 240.75). As noted above, in addition to describing the intruder to the 911 dispatcher, the victim also separately described him to White, who thereafter disseminated that description over the police radio, leading to Dufek's apprehension of defendant. Since the victim, White and Dufek were all available for cross-examination at trial, we find no basis for reversal (*see People v Armstrong, supra* at 723).

Defendant also claims that he was improperly sentenced as a persistent violent felony offender because the second of his pred-

icate violent felony convictions—i.e., his 1996 attempted burglary in the second degree conviction—was invalid due to the involuntary nature of his plea to that crime (*see* CPL 400.20 [6]). More specifically, he claims that he was inadequately informed in 1996 that his plea of guilty would render him eligible for a maximum life sentence in the event that he were subsequently convicted of another violent felony (*see* Penal Law § 70.08 [2]). However, we note that the record of the 1996 proceedings belies defendant's claim; he was indeed informed at that time of the possible repercussions of pleading guilty. In any event, a defendant's eligibility for an enhanced sentence upon a hypothetical future conviction is merely a "collateral consequence" of a plea of guilty that the defendant need not be advised of in order for the guilty plea to be deemed fully informed (*see People v Edwards*, 96 AD2d 610, 611 [1983]; *see also People v Nenni*, 269 AD2d 785, 787 [2000], *lv denied* 95 NY2d 801 [2000]; *compare People v Goss*, 286 AD2d 180, 182-184 [2001]; *see generally People v Ford*, 86 NY2d 397, 402-403 [1995]).

Finally, we conclude that defendant was afforded the effective assistance of counsel (*see generally People v Baldi*, 54 NY2d 137 [1981]). Defense counsel pursued a reasonable trial strategy, engaged in cogent cross-examination and gave an effective summation pointing out the weaknesses in the People's case. Although defendant claims that counsel failed to request certain advantageous jury instructions, we note that, contrary to defendant's current claim, the People need not establish which particular crime defendant intended to commit in the victim's home in order to prove he committed a burglary (*see People v Mackey*, 49 NY2d 274, 278-281 [1980]; *People v Richards*, 290 AD2d 584, 585-586 [2002], *lv denied* 98 NY2d 654 [2002]). Thus, counsel cannot be faulted for failing to pursue a jury charge to the opposite effect.

Spain, Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed.