Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  October 27, 2016                    106113
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,
        v                                  MEMORANDUM AND ORDER

THOMAS FRANQUEIRA JR.,
                    Appellant.
_____

Calendar Date:  September 9, 2016

Before:  McCarthy, J.P., Egan Jr., Devine, Clark and Aarons, JJ.

_____

        William D. Robert, Albany, for appellant.

        Joel E. Abelove, District Attorney, Troy (Vincent J.
O'Neill of counsel), for respondent.

_____

Egan Jr., J.

        Appeal from a judgment of the County Court of Rensselaer
County (Ceresia, J.), rendered April 30, 2013, upon a verdict
convicting defendant of the crimes of criminal possession of a
weapon in the second degree (two counts) and menacing in the
second degree.

        Defendant was charged in a six-count indictment with three
counts of criminal possession of a weapon in the second degree,
two counts of menacing in the second degree and one count of
resisting arrest.  The charges stemmed from an incident that
occurred on the evening of October 14, 2012 in the parking lot of
Popeye's Chicken on Hoosick Street in the City of Troy,
Rensselaer County.  On the evening in question, a woman called
for a taxicab to transport her to that location — intending to
meet up with defendant.  When the cab — then occupied by the

woman, her two children, the cab driver and the driver's husband — arrived at Popeye's, a disagreement arose between defendant and the cab driver, during the course of which defendant produced what was described as a silver handgun. Local police were notified, a description of the assailant was transmitted and, minutes later, defendant was stopped as he was observed running through a nearby parking lot and was returned to the scene for a showup identification. Both the cab driver and the driver's husband identified defendant as their assailant, and a black and silver handgun was recovered nearby.

Following unsuccessful motions to suppress, among other things, the pretrial showup identification, the matter proceeded to trial in early March 2013. Defendant's first trial ended in a mistrial but, at the conclusion of the second trial, defendant was convicted of two counts of criminal possession of a weapon in the second degree (counts 1 and 2 pertaining to the cab driver) and one count of menacing in the second degree (count 3 as to the cab driver) and was acquitted of those counts of the indictment charging him with menacing in the second degree (count 4) and criminal possession of a weapon in the second degree (original count 6)[1] as to the cab driver's husband. Defendant thereafter was sentenced, as a second felony offender, to an aggregate term of 10 years in prison followed by five years of postrelease supervision. This appeal by defendant ensued.

Initially, we agree with County Court that defendant was properly stopped and detained pending the showup identification. "Where a police officer reasonably suspects that a particular person has committed, is committing or is about to commit a

_____

[1] Count 5 of the indictment — charging defendant with resisting arrest — was dismissed prior to trial. In its charge to the jury, however, County Court denominated the original count 6 of the indictment — charging defendant with criminal possession of a weapon in the second degree as to the cab driver's husband — as count 5. Hence, any subsequent references to count 5, whether in County Court's charge or the parties' briefs on appeal, appear to be to the original count 6 of the indictment.

felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person" (People v Stroman, 107 AD3d 1023, 1023 [2013] [internal quotation marks and citations omitted], lv denied 21 NY3d 1046 [2013]; see People v Godallah, 132 AD3d 1146, 1149 [2015]).  "[A]n investigatory stop may be upheld if the authorities knew that a crime actually had been committed, the total period of the detention was brief, the police diligently pursued a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly, during which time it was necessary to detain the defendant and there is no proof of significantly less intrusive means available to accomplish the same purpose" (People v Mabeus, 68 AD3d 1557, 1561 [2009] [internal quotation marks and citations omitted], lv denied 14 NY3d 842 [2010]; see People v Hicks, 68 NY2d 234, 242-243 [1986]; People v Dibble, 43 AD3d 1363, 1364-1365 [2007], lv denied 9 NY3d 1032 [2008]).

The testimony adduced at the suppression hearing revealed that Brandon Cipperly, a police officer with the City of Troy Police Department, received a radio transmission advising of a possible robbery at Popeye's Chicken on Hoosick Street.  While en route to the scene, Cipperly also received a description of the suspect — "[a] light-skinned Hispanic male, longer, curlier hair, dark or gray hooded sweatshirt, a lighter colored sweatshirt underneath, either dark jeans or dark long or shorter jeans." Cipperly further was advised that the suspect was last seen running east on Hoosick Street and that "there was a possible silver color handgun involved."  Approximately 90 seconds later, Cipperly approached the scene; when he was "[l]ess than 50 yards" away from Popeye's Chicken, Cipperly encountered an individual matching the description given — later identified as defendant — running toward the patrol vehicle "in a full sprint" and with his hands at his sides or in his pockets.  Cipperly exited his patrol vehicle with his weapon drawn, ordered defendant to the ground and instructed defendant to show his hands.  Defendant refused to comply and continued advancing toward the patrol vehicle.  When defendant began slamming his hands on the hood of the vehicle, Cipperly attempted to handcuff him, at which point defendant tried to flee.  After defendant was handcuffed, he smashed his head on the pavement, stating his intention to sue the police

department.  Approximately three or four minutes later, two of Cipperly's fellow officers separately transported the cab driver and the driver's husband to the scene for purposes of a showup identification, whereupon each immediately and unequivocally identified defendant as the individual who had pulled a gun on them.

Defendant does not dispute that the showup identification occurred in close temporal and geographic proximity to the scene of the crime; rather, defendant argues that his detention ripened into a full-blown arrest (for which the police purportedly lacked probable cause) or, alternatively, that the showup identification procedures were unduly suggestive.  We disagree on both counts. Contrary to defendant's assertion, his seizure, "made on the basis of reasonable suspicion, was a brief investigative detention for the purpose of prompt identification by the victim[s], and the fact that the police [initially] detained defendant at gunpoint and [thereafter] used handcuffs did not transform the detention into an arrest requiring probable cause" (People v Gatling, 38 AD3d 239, 239-240 [2007], lv denied 9 NY3d 865 [2007]; see People v Allen, 73 NY2d 378, 379-380 [1989]; People v Mabeus, 68 AD3d at 1560-1561; People v Medina, 37 AD3d 240, 242 [2007], lv denied 9 NY3d 847 [2007]; People v Williams, 305 AD2d 804, 806-807 [2003]).  As to the actual showup procedures, the identification occurred in a well-lit area within minutes of — and in close proximity to — the scene of the crime, and the mere fact that defendant was handcuffed and standing next to police officers did not render the showup impermissibly suggestive (see People v Bellamy, 118 AD3d 1113, 1116 [2014], lv denied 25 NY3d 1159 [2015]; People v Mathis, 60 AD3d 1144, 1146 [2009], lv denied 12 NY3d 927 [2009]).  Similarly, the fact that officers advised the cab driver and the driver's husband that a suspect fitting the description had been stopped did not invalidate the showup, as this information "merely conveyed what a witness of ordinary intelligence would have expected under the circumstances" (People v Mathis, 60 AD3d at 1146 [internal quotation marks and citations omitted]).  In light of this conclusion, we need not consider defendant's probable cause argument.

Defendant next contends that the People failed to establish a sufficient chain of custody for the handgun to permit its introduction into evidence. Again, we disagree. "Real evidence is admissible when it is sufficiently connected with the defendant[] to be relevant to [the] issue in the case. If the object [in question] was taken from the defendant or found at the scene of the crime, the foundation is laid once it is shown that the thing offered is the one recovered and that its condition is substantially unchanged. The fact that it might have passed through several hands . . . is of little significance when the object possesses unique characteristics or markings and is not subject to material alteration which is not readily apparent" (People v Connelly, 35 NY2d 171, 174 [1974] [internal quotation marks and citations omitted]; see People v Shoga, 89 AD3d 1225, 1226 [2011], lv denied 18 NY3d 886 [2012]; People v Weiler, 194 AD2d 894, 895 [1993], lv denied 82 NY2d 728 [1993]).

Here, police officer Justin Ashe testified that he and two other members of the Troy Police Department retraced defendant's steps on the night in question; during the course of that search, Ashe found "a black and silver Sig Sauer Mosquito handgun" lying in a grassy area. Ashe radioed that he had located the handgun and thereafter testified that he "stayed with the weapon until [an evidence] box and camera" were brought to his location. After Ashe photographed the weapon, Sergeant Raymond White ejected the magazine, cleared a round from the chamber and placed the gun, magazine and ejected round into an evidence box, which Ashe retained until he turned the box over to Matthew Beaudoin, an evidence technician. White's testimony mirrored Ashe's account of the manner in which the gun was collected and placed into the evidence box. Beaudoin, in turn, testified that he received the evidence box containing the gun and ammunition from Ashe and White and, upon examining the weapon, recorded the serial number contained thereon. Beaudoin further testified that the serial number that he recorded on the gun intake form matched the serial number on the handgun that he was shown at trial. Finally, both the property room coordinator and the officer who test-fired the handgun identified the weapon at trial — specifically, the property room coordinator identified the weapon by matching the serial number written on a tag attached to the

evidence box to the serial number contained on the weapon itself, and the officer who test-fired the weapon identified the handgun both by its serial number and by his initials, which he had engraved upon the handgun's grip. Such proof, in our view, is sufficient to establish a valid chain of custody for the weapon (see People v Gamble, 135 AD3d 1078, 1080 [2016], lv denied 27 NY3d 997 [2016]; People v Shoga, 89 AD3d at 1226). Further, inasmuch as the record as a whole "provide[s] reasonable assurances of the identity and unchanged condition of the [handgun]" (People v Hawkins, 11 NY3d 484, 494 [2008]), we are satisfied that any gaps in that chain go to the weight to be accorded such evidence, not its admissibility (see id. at 494; People v Rolle, 72 AD3d 1393, 1396 [2010], lv denied 16 NY3d 745 [2011]). Accordingly, County Court did not err in permitting the People to introduce the handgun into evidence.

Nor are we persuaded that County Court abused its discretion in denying defendant's motions for a mistrial based upon prosecutorial misconduct. "Reversal of a conviction for prosecutorial misconduct is warranted only where a defendant has suffered substantial prejudice such that he [or she] was deprived of due process of law" (People v McCombs, 18 AD3d 888, 890 [2005]; accord People v Newkirk, 75 AD3d 853, 857 [2010], lv denied 16 NY3d 834 [2011]). "In determining whether prosecutorial misconduct deprived a defendant of a fair trial, this Court considers its severity and frequency, the corrective action taken, if any, and whether the result would likely have been the same in the absence of the conduct" (People v Wlasiuk, 136 AD3d 1101, 1103 [2016] [internal quotation marks and citations omitted], lv denied 27 NY3d 1009 [2016]).

Here, defendant cites two instances of alleged prosecutorial misconduct – a reference during the People's opening to the fact that there were "two little kids, two tiny, small children" inside of the taxi when defendant displayed the handgun and, further, a line of questioning directed at two teardrop tattoos on defendant's face. As to the comment made during the People's opening, defense counsel promptly objected and moved for a mistrial – contending that the People impermissibly made reference to an uncharged crime (endangering

the welfare of a child). County Court denied that motion but inquired as to whether defense counsel nonetheless wished for the court to instruct the jury to disregard that portion of the People's opening. Defense counsel, after twice being questioned on this point, declined to take a position on the need for such an instruction — leaving resolution of that issue to the discretion of County Court — and no such instruction ultimately was given. To the extent that defendant's argument on this point has been preserved for our review, we find it to be lacking in merit, as this isolated comment did not deprive defendant of a fair trial (see People v Delaney, 42 AD3d 820, 822 [2007], lv denied 9 NY3d 922 [2007]).

We reach a similar conclusion with respect to the issue of defendant's tattoos — namely, the implication that defendant had attempted to conceal his tattoos from the jury. Defense counsel unsuccessfully moved for a mistrial and, following much debate, the parties stipulated that defendant had "two teardrop tattoos under his left eye." County Court thereafter instructed the jury "not to speculate or draw any conclusions as to what such tattoos may mean" or "to consider those tattoos for any . . . reason" other than the identification of defendant. In view of the stipulation and resulting instructions to the jury, we again do not find that this particular line of questioning operated to deprive defendant of a fair trial.

Finally, as to defendant's request for a missing witness charge, we agree that defendant failed to demonstrate that the requested witness could offer noncumulative, material testimony (see e.g. People v Stokes, 141 AD3d 1032, 1034 [2016]). Accordingly, County Court did not abuse its discretion in denying defendant's request in this regard. Defendant's related request — that County Court erred in failing to charge the jury with the lesser included offense of criminal possession of a weapon in the fourth degree as to counts 1, 2 and 5 of the indictment — is equally lacking in merit.[2] Initially, inasmuch as defendant was

---

[2] As noted previously, count 5 of the indictment — charging defendant with resisting arrest — was dismissed prior to trial, and subsequent references thereto appear to refer to the original

acquitted of the crime charged in count 5 of the indictment, defendant's argument as to that particular count is moot (see People v Adams, 50 AD3d 433, 434 [2008], lv denied 10 NY3d 955 [2008]; People v Moore, 35 AD3d 291, 292 [2006], lv denied 8 NY3d 988 [2007]). As to count 1 of the indictment, defendant was charged with criminal possession of a weapon in the second degree under Penal Law § 265.03 (1) (b) based upon the theory that he possessed a loaded firearm; he requested that the jury be charged with the lesser included offense of criminal possession of a weapon in the fourth degree under Penal Law § 265.01 (2) — contending that he possessed either an unloaded firearm or a knife. Under count 2 of the indictment, defendant was charged with criminal possession of a weapon in the second degree pursuant to Penal Law § 265.03 (3) based upon the theory that he possessed a loaded firearm outside of his home or place of business; as to this count, defendant also requested that the jury be charged with the lesser included offense of criminal possession of a weapon in the fourth degree — this time relying upon Penal Law § 265.01 (1) and arguing either that the firearm was unloaded/inoperable, that he possessed such weapon in his home or place of business or that the weapon in question actually was a knife. County Court denied these requests finding, among other things, that there was no reasonable view of the evidence to support a finding that the handgun was unloaded or inoperable or that defendant's possession of the handgun occurred in his home or place of business.

"To establish entitlement to a lesser included offense charge, a defendant must demonstrate that, in all circumstances, it is impossible to commit the greater crime without concomitantly, by the same conduct, committing the lesser offense and, secondarily, that there is a reasonable view of the evidence that would support a finding that he or she committed the lesser offense but not the greater" (People v Grayson, 138 AD3d 1250, 1251 [2016] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 27 NY3d 1132 [2016]; see People Seals, 135 AD3d 985, 986 [2016]). Beginning with defendant's theory that he possessed a knife instead of a handgun, as County

_____

count 6 of the indictment (see note 1, supra).

Court aptly observed, possession of a knife is not an element of criminal possession of a weapon in the second degree under Penal Law § 265.03.  Accordingly, as defendant could have committed criminal possession of a weapon in the second degree without concomitantly committing criminal possession of a weapon in the fourth degree under the cited subdivision (Penal Law § 265.01 [2]), the latter did not constitute a lesser included offense of the former.  As to the balance of defendant's argument on this point, we agree with County Court that there is no reasonable view of the evidence that the firearm was unloaded or inoperable (see People v Marrero, 187 AD2d 281, 281 [1992], lv denied 81 NY2d 791 [1993]), nor is there any reasonable view of the evidence that defendant possessed the handgun in his home or place of business (compare People v Verni, 127 AD3d 887, 888 [2015], lv denied 25 NY3d 1209 [2015]).  Accordingly, County Court properly denied defendant's request to charge in this regard.  Defendant's remaining contentions, including his assertion that County Court impermissibly curtailed his examination of certain witnesses, have been examined and found to be lacking in merit.

McCarthy, J.P., Devine, Clark and Aarons, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court