Peters, P.J., Garry, Mulvey and Aarons, JJ., concur. Ordered that the judgment is affirmed.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REECE Z. BREWER, Appellant. [66 NYS3d 342]—

Garry, J. Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered September 28, 2015, convicting defendant upon his plea of guilty of the crime of attempted criminal possession of a weapon in the third degree.

A taxi driver was assaulted and robbed by three passengers, who then ran into a residence in the City of Elmira, Chemung County. Police officers arriving at the scene heard voices and knocked on the door. Defendant answered and was detained after he shouted a warning to those inside. Another man and a woman tried to leave the residence through a back door and were also detained by police officers. The victim identified defendant in a showup procedure as one of the people who had attacked and robbed him. Later that day, police searched the residence twice—first by consent and later pursuant to a warrant—and recovered items related to the robbery and an electronic stun gun. Defendant pleaded guilty to attempted criminal possession of a weapon in the third degree in satisfaction of multiple charges and was sentenced as a second felony offender to a prison term of 1½ to 3 years. Defendant appeals.

County Court did not err in denying defendant's motion to suppress the identification evidence. "A showup identification is permissible so long as it was reasonable under the circumstances—that is, when conducted in close geographic and temporal proximity to the crime—and the procedure used was not unduly suggestive" (*People v Vaughn*, 135 AD3d 1158, 1159

[2016] [internal quotation marks and citations omitted], *lv denied* 27 NY3d 1076 [2016]; *see People v Ortiz*, 90 NY2d 533, 537 [1997]). A *Wade* hearing was conducted, and the testimony established that the victim identified defendant just over an hour after the police were summoned. The officers placed the three suspects in separate patrol cars and removed them one at a time to be viewed as the victim was driven past each suspect standing on the street. The patrol car in which the victim was seated traveled around the block between viewings, so that the victim would not see the suspects as officers transferred them between the patrol cars and the street. Defendant was the second suspect to be viewed. This showup procedure was reasonable, as it was conducted at the scene of the crime and "as soon as practicable following defendant's apprehension" (*People v August*, 33 AD3d 1046, 1048 [2006], *lv denied* 8 NY3d 878 [2007]; *see People v Mattis*, 46 AD3d 929, 930-931 [2007]; *People v Boyd*, 272 AD2d 898, 899 [2000], *lv denied* 95 NY2d 850 [2000]). Police said nothing unduly suggestive to the victim before the identification, and the fact that defendant was handcuffed and standing near an officer and several police cars did not render the procedure "so unnecessarily suggestive as to create a substantial likelihood of misidentification" (*People v Armstrong*, 11 AD3d 721, 722 [2004] [internal quotation marks and citations omitted], *lv denied* 4 NY3d 760 [2005]; *see People v Franqueira*, 143 AD3d 1164, 1166 [2016]; *People v Bellamy*, 118 AD3d 1113, 1116 [2014], *lv denied* 25 NY3d 1159 [2015]).

Defendant failed to preserve his contention that he was illegally detained by raising it in his omnibus motion or at the suppression hearing (*see People v Wedekind*, 200 AD2d 891, 892 [1994], *lv denied* 83 NY2d 1008 [1994]; *see generally People v Durham*, 146 AD3d 1070, 1072 [2017], *lv denied* 29 NY3d 997 [2017]). Upon review, we do not find that his counsel's failure to preserve this issue by requesting a *Dunaway* hearing deprived defendant of meaningful representation. Defendant matched a general description provided by the victim, and answered the door of the residence into which the three suspects had fled shortly before the police arrived. He stepped out onto a front porch and, upon seeing the police, immediately tried to retreat indoors while shouting a warning to others that police were present. On this evidence, police had reason to suspect that defendant had been involved in the alleged robbery and assault. Given the rapidly developing situation, his detention in a patrol car until he could be viewed by the victim was justified "to quickly confirm or dispel [this] reasonable suspicion" (*People v Stroman*, 107 AD3d 1023, 1024 [2013], *lv*

*denied* 21 NY3d 1046 [2013]; *see People v Franqueira*, 143 AD3d at 1165). There is thus little or no possibility that a challenge to the legality of defendant's detention would have resulted in suppression of the identification evidence, and the failure to make an argument with little or no chance of success does not constitute ineffective assistance of counsel (*see People v Caban*, 5 NY3d 143, 152 [2005]; *People v Criss*, 151 AD3d 1275, 1280 [2017], *lv denied* 30 NY3d 979 [2017]).

For similar reasons, we reject defendant's claim that his counsel was ineffective for failing to challenge the legality of the search warrant that led to the discovery of the stun gun.* Just after defendant was apprehended, police obtained consent to search the residence from its tenant, who told police that defendant had a bedroom there. During this search, officers found a handgun holster and a live round of .22 caliber ammunition in the same bedroom as a taxi receipt bearing the number of the taxi driven by the victim. The warrant application set forth these facts and alleged that there was reasonable cause to believe that unlawfully possessed property, in addition to items related to the robbery, would be found in the residence. The resulting warrant authorized police to search the residence for items related to the attack on the taxi driver and also for deadly weapons, dangerous instruments and firearms. A presumption of validity attaches to a judicially approved search warrant (*see People v Castillo*, 80 NY2d 578, 585 [1992], *cert denied* 507 US 1033 [1993]; *People v Cherry*, 149 AD3d 1346, 1347-1348 [2017], *lv denied* 29 NY3d 1124 [2017]), and this warrant application provided "sufficient information to support a reasonable belief that evidence of a crime [would] be found in [the residence]" (*People v Pasco*, 134 AD3d 1257, 1258 [2015]; *see People v Bigelow*, 66 NY2d 417, 423 [1985]). Thus, a challenge to the warrant by defense counsel would have had little or no chance of success (*see People v Caban*, 5 NY3d at 152).

Finally, defendant's challenge to the voluntariness of his plea—which is premised entirely upon his unsuccessful claims of ineffective assistance of counsel—is unpreserved, as he did not make an appropriate postallocution motion and said nothing during the plea colloquy that would bring the case within the narrow exception to the preservation requirement (*see People v Lopez*, 71 NY2d 662, 665-666 [1988]; *People v Empey*, 144 AD3d 1201, 1203 [2016], *lv denied* 28 NY3d 1144 [2017];

---

* The record reveals that, at defendant's request, defense counsel obtained an adjournment to file a motion challenging the search warrant. However, after further review, counsel advised defendant that he did not intend to file the motion because he had concluded that it would not succeed.

*People v Skidds*, 123 AD3d 1342, 1342-1343 [2014], *lv denied* 25 NY3d 992 [2015]).

Peters, P.J., Devine, Clark and Aarons, JJ., concur. Ordered that the judgment is affirmed.

