People v Williams (2020 NY Slip Op 03569)





People v Williams


2020 NY Slip Op 03569


Decided on June 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 25, 2020

109371

[*1]The People of the State of New York, Respondent,
v
Curtis Williams, Appellant.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ. 


Dennis J. Lamb, Troy, for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Devine, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered April 24, 2017, convicting defendant upon his plea of guilty of the crime of attempted criminal possession of a weapon in the second degree.
Following the armed robbery of a car wash in January 2016, City of Albany police investigators publicized surveillance video footage and a frame captured from it that depicted a suspect. The suspect was identified by several tipsters, including the parole officer who had supervised him, as defendant. Defendant remained at large in April 2016, when a woman was hospitalized with injuries sustained as the result of her friend's boyfriend entering her apartment and striking her in the head with a heavy object. The victim only knew the assailant's nickname; another woman, however, contacted investigators to name defendant as the perpetrator and add that he often carried a handgun and wore a distinctive Tweety Bird jacket. An investigating detective prepared a photo array to show to the victim but, as he was about to do so, heard a radio call dispatching officers to check out an annoyance caused by defendant at the victim's housing complex. The detective telephoned a responding officer to advise that defendant was suspected of assault, possibly armed and wearing a Tweety Bird jacket. Another patrol officer was dispatched to the area with information that an armed man of defendant's description was outside wearing a cartoon jacket. Defendant was spotted by officers in front of the housing complex as they arrived. He fled, was then apprehended and found to be unarmed.
Around the time that defendant was apprehended, the victim of the assault identified him from the photo array. Defendant was taken into custody and interviewed twice by investigators, terminating the first interview about the assault and handgun by invoking his right to remain silent and then speaking to another investigator about the car wash robbery several hours later. Investigators obtained a search warrant for the address where defendant was living and found various items of interest, then searched the route of defendant's attempted escape and recovered a handgun that defendant's girlfriend said appeared to be his.
Defendant was charged in an indictment with various offenses. County Court denied his motion to suppress physical evidence, identification evidence and his statements to police, as well as his motion for reargument. Defendant then pleaded guilty to attempted criminal possession of a weapon in the second degree in satisfaction of the indictment and waived his right to appeal, except for issues relating to the denial of his suppression motion. County Court denied defendant's pro se motion to withdraw his plea, adjudicated him to be a persistent violent felony offender and sentenced him, as agreed, to a term of 12 years to life in prison. Defendant appeals, primarily arguing that County Court erred in denying his motion to suppress.
According deference to County Court's assessment that the suppression hearing testimony and evidence submitted by the People were in all respects credible (see People v Elder, 173 AD3d 1344, 1345 [2019], lv denied 34 NY3d 930 [2019]; People v Vandebogart, 158 AD3d 976, 978 [2018], lv denied 31 NY3d 1089 [2018]), we agree with the court that defendant's pursuit, detention and arrest were proper. The record reflects that one of the officers who responded to the call involving defendant knew that he was suspected of an assault, while more than one knew that he was potentially armed.[FN1] Accordingly, when the officers arrived on the scene and saw defendant wearing his trademark Tweety Bird jacket, they at least had "a founded suspicion that criminal activity was afoot and [were] entitled to interfere with defendant to the extent necessary to gain explanatory information" (People v Lewis, 277 AD2d 603, 605 [2000], lv denied 95 NY2d 966 [2000]; see People v De Bour, 40 NY2d 210, 223 [1976]). Defendant fled as soon as he spotted the officers and, in tandem with the officers' existing knowledge, that development afforded "reasonable suspicion to believe a crime had been committed such that defendant's pursuit and detention were justified" (People v Belle, 74 AD3d 1477, 1479 [2010], lv denied 15 NY3d 918 [2010]; see People v Woods, 98 NY2d 627, 628-629 [2002]; People v Morris, 105 AD3d 1075, 1077 [2013], lv denied 22 NY3d 1042 [2013]). Probable cause to place defendant under arrest existed no later than around the time the chase concluded, when the officers were advised that the victim of the assault had identified defendant as her assailant and were further directed to bring him in for questioning (see People v Matthews, 159 AD3d 1111, 1113 [2018]; People v Green, 127 AD3d 1473, 1474 [2015], lvs denied 27 NY3d 965, 969 [2016]).[FN2] The actions of police in the leadup to defendant's arrest were therefore proper and, as a result, defendant lacked standing to seek suppression of the handgun abandoned along the route of the chase (see People v Martinez, 80 NY2d 444, 449 [1992]; People v Ross, 106 AD3d 1194, 1196-1197 [2013], lv denied 22 NY3d 1090 [2014]).
Turning next to the identification of defendant as the suspect in the car wash robbery, a detective testified that the video clip and still frame of the robbery released to the media were portions of a surveillance video that he viewed immediately after the robbery on the car wash's operable video equipment, and he further explained how the excerpts were selected from a copy of that video downloaded by another officer who checked its accuracy. In our view, this testimony was adequate to establish the "authenticity and integrity" of the video excerpt and still frame, and County Court did not abuse its "founded discretion" by admitting those items into evidence (People v Patterson, 93 NY2d 80, 84 [1999]; see People v Grant, 170 AD3d 888, 890 [2019], lv denied 33 NY3d 1031 [2019]; People v Costello, 128 AD3d 848, 848 [2015], lv denied 26 NY3d 927 [2015]).
Defendant further notes that County Court failed to explicitly address the significance of his invocation of his right to remain silent at the end of his first police interview. However, as County Court made otherwise thorough written findings of fact and conclusions of law and the issue was fully explored at the suppression hearing, we perceive no reason to remit and will make our own determination on that point from the record before us (compare People v Pouliot, 64 AD3d 1043, 1044 [2009], lv denied 13 NY3d 838 [2009], with People v Youngs, 169 AD3d 1155, 1156 [2019]). The video recording of the first interview shows that defendant was Mirandized, that he agreed to speak with detectives, that the questioning involved the assault and his alleged weapon possession and that it ended when defendant stated that he was "done talking." A second recording shows defendant and a different detective enter the interview room several hours later. The detective stated that he knew that defendant had spoken to other detectives earlier and that, although defendant did not have to talk to him, he was hoping to talk about a different subject.[FN3] Defendant was agreeable, the detective Mirandized him again and proceeded to ask questions about the car wash robbery and the surveillance video, which defendant answered without complaint. As a result, although defendant made "an unconditional and unequivocal invocation of his right to remain silent" to end the first interview, he waived that right following the administration of Miranda warnings at the outset of the second interview, and the ensuing questioning was proper (People v Logan, 19 AD3d 939, 941 [2005], lv denied 5 NY3d 830 [2005]; see People v Gary, 31 NY2d 68, 69-70 [1972]; People v Masi, 151 AD3d 1389, 1390 [2017], lv denied 30 NY3d 1062 [2017]). Thus, we perceive no reason to suppress the statements made by defendant during the second interview.
Defendant's remaining contentions, advanced in defense counsel's brief and in defendant's pro se supplemental brief, do not require extended discussion. A presumption of validity attaches to a judicially approved search warrant and, upon review of the search warrant application here, we are satisfied that the information therein supported a reasonable belief that evidence of illegality could be found at defendant's residence (see People v Williams, 140 AD3d 1526, 1526-1527 [2016], lv denied 28 NY3d 1076 [2016]; see e.g. People v Brewer, 155 AD3d 1447, 1449 [2017]). Defendant's claim of prosecutorial misconduct relating to the failure to produce the recording of a 911 call is precluded by his valid appeal waiver (see People v Jackson, 128 AD3d 1279, 1280 [2015], lv denied 26 NY3d 930 [2015]). In any event, it is meritless in light of the parties' stipulation that the recording had not been preserved despite timely demand by both defendant and the People. His ineffective assistance claim involves matters outside the record and is better explored in a CPL article 440 motion (see People v Griffin, 134 AD3d 1228, 1230 [2015], lv denied 27 NY3d 1132 [2016]). Finally, notwithstanding his unsuccessful pro se motion to withdraw his guilty plea, defendant's challenge to the factual sufficiency of the plea allocution is precluded by his appeal waiver (see People v Thompson-Goggins, 182 AD3d 916, 918 [2020]; People v Jackson, 128 AD3d at 1279 [2015], lv denied 26 NY3d 930 [2015]).
Garry, P.J., Egan Jr., Mulvey and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Inasmuch as the individual who identified defendant as having assaulted the victim and warned that he was armed "was not a confidential informant but a known member of the community," defendant's effort to invoke the Aguilar-Spinelli test to assess her reliability is misplaced (People v Matthews, 159 AD3d 1111, 1113 [2018]).

Footnote 2: After examining the photo array and the testimony relating to its administration, we agree with County Court that, to the extent that the victim's identification of defendant was not confirmatory, the identification procedures used were not unduly suggestive (see People v Smith, 157 AD3d 978, 978-979 [2018], lvs denied 31 NY3d 1087 [2018]; People v Hunter, 273 AD2d 500, 502 [2000], lv denied 95 NY2d 935 [2000]).

Footnote 3: The detective who conducted the second interview testified that, at the time, he knew that an earlier interview had occurred but did not know how it had ended.