People v Smith (2020 NY Slip Op 03947)





People v Smith


2020 NY Slip Op 03947


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

107314

[*1]The People of the State of New York, Respondent,
v
Tyon Smith, Appellant.

Calendar Date: June 10, 2020

Before: Garry, P.J., Clark, Mulvey, Aarons and Colangelo, JJ.


Dana L. Salazar, East Greenbush, for appellant.
Mary Pat Donnelly, District Attorney, Troy (George J. Hoffman Jr. of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the County Court of Rensselaer County (Young, J.), rendered December 3, 2014, convicting defendant upon his plea of guilty of the crimes of robbery in the second degree, petit larceny and criminal possession of a weapon in the fourth degree.
In June 2014, defendant and two others were arrested following the robbery of a convenience store in the City of Troy, Rensselaer County. Defendant was charged with robbery in the second degree, petit larceny and criminal possession of a weapon in the fourth degree. Defendant moved to suppress a showup identification and certain evidence found in the vehicle in which he was a passenger at the time of his arrest. Following County Court's denial of this motion, defendant pleaded guilty to the crimes as charged, but did not waive his right to appeal. Defendant was sentenced as a second felony offender to a prison term of seven years to be followed by five years of postrelease supervision for the robbery conviction, and to concurrent terms of one year for his other convictions. Defendant appeals.
Defendant argues that County Court erred in denying his suppression motion, asserting that the stop was improper. "[A]n investigatory stop may be upheld if the authorities knew that a crime actually had been committed, the total period of the detention was brief, 'the police diligently pursued a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly, during which time it was necessary to detain the defendant' and 'there is no proof of significantly less intrusive means available to accomplish the same purpose'" (People v Mabeus, 68 AD3d 1557, 1561 [2009], lv denied 14 NY3d 842 [2010], quoting People v Hicks, 68 NY2d 234, 242-243 [1986]). "Where a police officer reasonably suspects that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person" (People v Franqueira, 143 AD3d 1164, 1165 [2016] [internal quotation marks and citations omitted]; see CPL 140.50 [1]; see also People v De Bour, 40 NY2d 210, 223 [1976]). "To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion" (People v Nesbitt, 56 AD3d 816, 818 [2008] [internal quotation marks and citation omitted], lv denied 11 NY3d 928 [2009]). The People bear the "initial burden of showing that the stop was lawful" (People v Allen, 90 AD3d 1082, 1085 [2011]; accord People v Driscoll, 145 AD3d 1349, 1349 [2016]).
During the suppression hearing, an officer (hereinafter the responding officer) with the City of Troy Police Department testified that he responded just after midnight to a 911 call from a convenience store on Pawling Avenue. Upon his arrival, he spoke with the store clerk, who reported that, a few moments earlier, a male and female had entered the store, pushed her to the ground, and demanded that she open the safe. She gave detailed descriptions of the height, build and clothing of both individuals. Among other things, she stated that both individuals were wearing sweatshirts with the hoods up and had something covering their faces. The store clerk described their clothing, stating that the female's sweatshirt was dark-colored and the male's was gray. The responding officer also spoke with two customers who had arrived outside the convenience store during the robbery. The customers stated that the suspects wore "gray[-]colored clothing" and headed toward Plum Avenue after exiting.
Shortly after the robbery, a passerby telephoned the convenience store and spoke with the responding officer. The passerby stated that he saw two individuals "run out of the store towards Plum Avenue," with the male wearing "gray[-] colored clothing, gray sweats." He indicated that the male appeared to get into the front passenger seat of a vehicle parked on Plum Avenue, and the vehicle began to travel away from Pawling Avenue, toward Congress Street. The passerby claimed that he encountered the same vehicle a few moments later, at the intersection of Pawling Avenue and Spring Avenue, and described the vehicle as a "tan/gold[-]colored Ford Taurus" from the early 2000s; he said that he followed the car until it turned left onto Linden Avenue. The responding officer then radioed other officers with this information.
A second police officer (hereinafter the second responding officer) also went to the convenience store, spoke with the store clerk, and radioed an updated description of the suspects to other officers. He viewed surveillance video footage that showed the male suspect wearing clothing corresponding with the store clerk's description, including a gray jacket with black trim. On cross-examination, the second responding officer stated that he had a telephone conversation with the police sergeant who ultimately detained defendant.[FN1] He acknowledged that in this conversation he had provided the sergeant with a different description of the male suspect's race and skin color than he had first provided over the radio.
The sergeant testified that, upon learning of the robbery, he drove downtown based on his belief that the vehicle containing the suspects was heading in that direction. At approximately 12:20 a.m., he noticed a "tan, beige or champagne[-]colored Ford Taurus, four-door sedan, early 2000s," carrying three occupants. The sergeant followed the vehicle as it "closely matched the description" of the vehicle that had been seen leaving the convenience store. He informed dispatch of his intent to stop the vehicle, but the vehicle pulled over before he could do so. The sergeant activated his emergency lights and approached the vehicle. The sergeant testified that, at this time, he did not think the vehicle's occupants were the robbery suspects due, in part, to inconsistencies relative to the skin color and racial identity with the initial descriptions of the perpetrators that had been communicated. However, upon approaching the vehicle, the sergeant saw defendant in the front passenger seat and observed that, although defendant's race differed from the descriptions that he had received, defendant's general appearance otherwise corresponded with that information, specifically including the description of his clothing; among other things, the sergeant noticed that defendant was wearing a gray sweatshirt jacket, and that a T-shirt on the floor in front of his seat had apparently been "fashioned in[to] some type of bandana." The other occupants of the vehicle were a male driver and a female in the backseat. The sergeant described defendant and the other occupants of the vehicle to officers at the convenience store, and the officers responded that the description "possibly" matched that of the suspects. The sergeant then removed defendant and the other occupants from the vehicle and placed them in separate patrol cars for a showup identification.
Approximately an hour later, the second responding officer escorted the store clerk to the area where defendant was being detained to conduct a showup identification. This officer testified that he took a specific route while driving the store clerk to the area to minimize opportunities for her to see police officers before the identification. When the vehicle in which the store clerk was riding arrived, defendant was standing approximately 25 feet in front of a police vehicle, with his hands cuffed behind his back. Defendant was illuminated by a spotlight and was standing between two police officers. After viewing defendant, the store clerk said that his clothes and build were "very similar" to those worn by one of the suspects, but that she was not "a hundred percent sure" because the suspect's face had been covered. The store clerk positively identified the female suspect, stating, "That's definitely her."
As defendant asserts, there were inconsistencies between the sergeant's observations of defendant and the descriptions that he had been provided relative to the male suspect's race and skin tone. However, the rest of the information about the male suspect's height and build, the detailed description of his clothing, and the description of the vehicle in which the male suspect had reportedly left the scene were nonetheless adequate to provide the sergeant with reasonable suspicion that defendant was one of the individuals involved in the robbery. Thus, a brief detention for the purpose of "confirm[ing] or dispel[ling] suspicion quickly" was justified (People v Hicks, 68 NY2d at 242; see People v Ford, 110 AD3d 1368, 1371 [2013], lv denied 24 NY3d 1043 [2014]; People v Rose, 72 AD3d 1341, 1344-1345 [2010], lv dismissed 16 NY3d 745 [2011]; People v Nesbitt, 56 AD3d at 818; People v Bennett, 189 AD2d 924, 925 [1993]).
To the extent that defendant also challenges his arrest, an arrest "requires probable cause to believe that the person to be arrested has committed a crime" (People v Rose, 155 AD3d 1322, 1323 [2017], lv denied 31 NY3d 986 [2018]). As stated above, although the store clerk positively identified the female suspect, she could not identify defendant with the same level of certainty. However, upon review, we agree that the sergeant's observations of defendant and the previously-discussed information provided by the store clerk, the customers and the passerby provided officers with "knowledge of facts and circumstances sufficient to support a reasonable belief that an offense ha[d] been . . . committed" and that defendant was the perpetrator (People v Stroman, 106 AD3d 1268, 1269 [2013] [internal quotation marks and citations omitted], lv denied 21 NY3d 1046 [2013]; see People v Oliver, 191 AD2d 815, 816-817 [1993]). Accordingly, as "great weight is accorded the trial court's determination at a suppression hearing and, absent a basis in the record [before us] for finding that the court's resolution of credibility issues was clearly erroneous," we decline to disturb County Court's determination (People v Rudolph, 170 AD3d 1258, 1259 [2019], lv denied 34 NY3d 937 [2019]; accord People v Williams, 25 AD3d 927, 928 [2006], lv denied 6 NY3d 840 [2006]).
Contrary to defendant's assertions, the showup identification was not improper. "Generally, a showup identification is permissible if reasonable and not unduly suggestive. The necessary reasonableness is demonstrated by proof that the showup was conducted in close geographic and temporal proximity to the crime. A showup is not unduly suggestive if it occurs under circumstances which were not so unnecessarily suggestive as to create a substantial likelihood of misidentification" (People v Armstrong, 11 AD3d 721, 722 [2004] [internal quotation marks, brackets and citations omitted], lv denied 4 NY3d 760 [2005]; see People v Brisco, 99 NY2d 596, 597 [2003]). Here, the showup identification occurred about an hour and a half after the robbery and a few miles from the convenience store (see People v August, 33 AD3d 1046, 1048-1049 [2006], lv denied 8 NY3d 878 [2007]). "[T]he mere fact that defendant was handcuffed and standing next to police officers did not render the showup impermissibly suggestive" (People v Franqueira, 143 AD3d at 1166; see People v Armstrong, 11 AD3d at 722). The record reflects that officers took steps to shield the store clerk from potential prejudice, such as viewing the surveillance footage outside her presence and taking a specific route to the showup to avoid police vehicles, and further ensured that the area was well lit. Thus, County Court properly found that the showup identification was "reasonable and not unduly suggestive" (People v Armstrong, 11 AD3d at 722).
Clark, Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Before this call, the sergeant had asked the other officers to reduce their use of the radio as much as possible.