People v Forney (2020 NY Slip Op 02949)





People v Forney


2020 NY Slip Op 02949


Decided on May 21, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 21, 2020

109876

[*1]The People of the State of New York, Respondent,
v
Jeffrey A. Forney Jr., Appellant.

Calendar Date: March 27, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Easton Thompson Kasperek Shiffrin, Rochester (Brian Shiffrin of counsel), for appellant.
Joseph G. Fazzary, District Attorney, Watkins Glens (John C. Tunney of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the County Court of Schuyler County (Morris, J.), rendered July 20, 2017, convicting defendant following a nonjury trial of the crimes of predatory sexual assault (two counts) and unlawfully dealing with a child in the first degree.
Defendant was charged by indictment with three counts of predatory sexual assault and one count of unlawfully dealing with a child in the first degree. The charges arose after defendant, Aaron Bowen and Lyle Beebe met an 18-year-old female (hereinafter the victim) and brought her to defendant's house, where they all drank alcohol; the victim awoke in the hospital the next day with no recollection of most of the prior night. A joint jury trial of defendant and Bowen ended in a mistrial due to the jury being deadlocked. Thereafter, defendant's matter was severed from Bowen's and defendant waived his right to a jury trial. At his bench trial, the parties stipulated into evidence the transcript and exhibits from the jury trial, although County Court could not consider Bowen's statements as evidence against defendant. The court found defendant guilty of two counts of predatory sexual assault, for which it imposed concurrent prison terms of 21 years to life, and one count of unlawfully dealing with a child in the first degree, for which it imposed a concurrent one-year term of incarceration. Defendant appeals.
The verdict as to the two counts of predatory sexual assault is not against the weight of the evidence.[FN1] "A weight of the evidence review requires this Court to first determine whether, based on all the credible evidence, a different finding would not have been unreasonable. Where a different finding would not have been unreasonable, this Court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Stover, 178 AD3d 1138, 1139 [2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 1163 [2020]). "A person is guilty of predatory sexual assault when he or she commits the crime of rape in the first degree [or] criminal sexual act in the first degree . . . and when . . . [h]e or she has previously been subjected to a conviction for a felony defined in [Penal Law article 130]" (Penal Law § 130.95 [3]). The last element was satisfied by defendant's admission that in 2013 he was convicted of attempted sexual abuse in the third degree. The definitions of rape in the first degree and criminal sexual act in the first degree require certain sexual activity with another person who, as relevant here, "is incapable of consent by reason of being physically helpless" (Penal Law §§ 130.35 [2]; 130.50 [2]). Defendant's former girlfriend testified that defendant admitted to her that he engaged in vaginal intercourse and anal sexual conduct with the victim. Considering that evidence, along with proof that the victim complained of soreness in her vaginal and anal areas, physical helplessness remains as the only element truly in dispute.
"'Physically helpless' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]; see People v Edison, 167 AD3d 769, 770 [2018], lv denied 33 NY3d 947 [2019]). "A person who is asleep or unable to communicate as a result of voluntary intoxication is considered to be physically helpless" (People v Bjork, 105 AD3d 1258, 1260 [2013] [citations omitted], lv denied 21 NY3d 1040 [2013], cert denied 571 US 1213 [2014]; see People v Himmel, 252 AD2d 273, 276 [1999], lv denied 93 NY2d 899 [1999]). The victim testified that she remembers going to defendant's house, playing pool, drinking two shots of vodka and a mixed drink, then nothing until the following afternoon when she awoke at the hospital. She did not recall engaging in any sexual activity, nor did she recall being found by the side of the road, riding to the hospital in an ambulance, or speaking to police or medical personnel throughout the morning. Beebe testified that the victim drank vodka shots and a mixed drink, began drinking swigs of vodka from the bottle, then drank three quarters of a pint glass of vodka rather quickly, as if it were water. After she consumed the glass of vodka, the victim stumbled to a counter and held herself up with her elbows. Beebe testified that the victim became "incoherent," "could hardly talk" and "could hardly stand on her own two feet without any type of support," and her motor functions were shutting down, "[h]er legs were [like] noodles," the bottom half of her body was "limp" like a "rag doll" and she had little to no control. Her condition appeared to be worsening and Beebe thought her physical state reflected the symptoms of alcohol poisoning. Beebe left defendant's house at approximately 2:30 a.m., and the victim had not consumed alcohol for 30 to 40 minutes before he left.
Two witnesses testified that when they found the victim by the road between 6:15 a.m. and 6:30 a.m., she was unresponsive, had slurred speech when she finally responded and was unable to get up or even roll herself over. A hospital blood test at 8:40 a.m. revealed that her blood alcohol content (hereinafter BAC), when converted to a whole blood figure as required for legal proceedings, was between .22% and .23%. The People's expert, Mark Waruch, conducted a reverse extrapolation [FN2] and determined that the victim's BAC would have been between .28% and .38% at 2:40 a.m. He testified that a BAC between .20% and .30% reflects dramatic impairment, and between .30% and .39% seriously impacts an individual such that the person is not able to move about on his or her own or speak coherently, and may drift in and out of consciousness.
On recorded phone calls from jail, when defendant was discussing the victim and her statement to police, he said that "obviously she don't know" and he was "pretty sure she doesn't know what happened." He also indicated his belief that he could not be charged if no DNA evidence was discovered; this would not be correct if he believed that the victim had been conscious and able to remember the sexual activity. The evidence of the victim's extreme intoxication from at least 2:00 a.m. until after she arrived at the hospital indicates that she was physically helpless throughout that time, which necessarily includes the time of defendant's sexual activity with her. Although a different verdict would not have been unreasonable had the trier of fact found some of the witnesses incredible, the verdict is not against the weight of the evidence.
Defendant acknowledges that he did not object to Waruch's testimony or move to strike it on the basis that Waruch lacked the necessary foundation for his calculations. Hence, that argument is not preserved, and we decline to exercise our interest of justice jurisdiction. Nevertheless, defendant also raises counsel's failure to assert that argument as part of his allegations of ineffective assistance of counsel.
Defendant argues that he was denied the effective assistance of counsel due to defense counsel's failure to (1) seek preclusion of Waruch's reverse extrapolation testimony as lacking foundation, (2) object to the victim's testimony that she did not consent to engaging in sexual acts, despite her inability to recall anything during the time in which the acts occurred, and (3) object to the testimony of defendant's former girlfriend that, based on her conversations with defendant, she assumed that the victim was unconscious when defendant engaged in the sexual acts at issue. "To establish a claim of ineffective assistance of counsel, [a] defendant is required to demonstrate that he [or she] was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Lancaster, 143 AD3d 1046, 1051 [2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 1147 [2017]). In that regard, this Court must evaluate the totality of counsel's representation, considering "whether counsel made appropriate motions, set forth a cogent defense theory, interjected viable objections, conducted meaningful cross-examination, gave an effective summation and otherwise presented a zealous defense" (People v Bush, 107 AD3d 1302, 1303 [2013]).
Prior to trial, counsel moved to exclude testimony based on reverse extrapolation, or for a Frye hearing to challenge its admissibility. County Court denied the motion, finding that reverse extrapolation — a process by which an expert renders an opinion regarding a person's BAC at an earlier time based on calculations from that person's known BAC at a later time — had already been deemed admissible by the courts (see e.g. People v Menegan, 107 AD3d 1166, 1168-1169 [2013]; People v Cross, 273 AD2d 702, 703 [2000]; People v MacDonald, 227 AD2d 672, 674-675 [1996], affd 89 NY2d 908 [1996]). This Court has previously held that, "[a]ssuming the expert in question is qualified and a proper foundation has been laid for such opinion, reverse extrapolation testimony may be admitted" (People v Menegan, 107 AD3d at 1169).
Defendant does not challenge Waruch's qualifications as an expert. Rather, defendant contends that Waruch did not have an adequate foundation for rendering an opinion regarding the victim's BAC at the time of the incident. Specifically, defendant asserts that Waruch did not have enough known facts to support the necessary assumptions to properly conduct a reverse extrapolation. Counsel appeared to be well-versed in the scientific aspects of this theory, as well as the relevant literature on the topic. The prosecution and defense experts disagreed on what assumptions are necessary to conduct an accurate reverse extrapolation. Waruch explained that for legal purposes, a whole blood BAC was necessary, whereas the hospital test provided a blood serum BAC. Waruch converted the serum BAC by performing two calculations, one using an average whole blood value and the other using a conservative whole blood value. He then used those two base values to perform the reverse extrapolation under three analyses to account for varying rates of alcohol metabolization: fast, average and slow rates. These six calculations, based on estimated rates of elimination of alcohol from the victim's system, produced a range for the victim's BAC at 2:40 a.m. of .28% to .38%. Although Waruch did not know the exact time that the victim stopped consuming alcohol and, therefore, did not definitively know that she was in a post-absorptive state at 2:40 a.m., he testified that 80% of the alcohol a person consumes is absorbed into the system within 10 minutes and his review of Beebe's statement revealed that the victim ceased consuming alcohol before 2:00 a.m. No other evidence indicated that the victim consumed alcohol after that time. Thus, it appears unlikely that an objection to Waruch's opinion testimony based on lack of foundation would have been successful. Even so, counsel vigorously cross-examined Waruch and presented his own expert who challenged Waruch's calculations and opined that not enough information was known to make an accurate BAC calculation through reverse extrapolation.
As for the victim's testimony, when asked if she consented to any sexual acts with defendant or Bowen, she testified that she did not consent, she did not want to have sex that night and she did not remember engaging in any sexual acts. Defendant may be technically correct that a person should not be able to definitively testify that he or she did not do or say something during a period for which he or she has no memory, and an objection on that basis may have been sustained. However, County Court found that the victim was physically helpless, meaning that she was incapable of giving consent in any event. Moreover, counsel may have chosen not to object, but to instead use the victim's insistence to attack her credibility.
Defendant's former girlfriend testified that she assumed from her conversations with defendant that the victim was incoherent or unconscious at the time of the incident, but defendant had never said so. However, her testimony indicates that this belief regarding the victim's condition was actually a presumption based on the context of the conversations. Although a witness may not speculate, he or she may testify as to his or her understanding — from the context of overall conversations — of something that was not explicitly stated. An objection would likely not have been successful. In any event, the witness clarified that defendant never stated that the victim was incoherent or unconscious and that the witness had made an assumption. Counsel may have strategically chosen not to inquire any further, so as to avoid discussion of the specific basis for her assumption, which would likely have been harmful to the defense (see People v Richardson, 162 AD3d 1328, 1332 [2018], lv denied 32 NY3d 1128 [2018]). Leaving the testimony as it was allowed counsel to attack the credibility of the witness because she was basing her testimony on assumptions.
Counsel made pretrial motions to dismiss the charges and preclude evidence, raised numerous objections, presented a cogent defense, meaningfully cross-examined the People's witnesses, presented an expert who challenged the People's expert testimony and delivered a strong summation. Counsel was successful in obtaining a hung jury in the first trial and acquittal of one felony count in the second trial. Considering counsel's overall performance, we cannot conclude that defendant was deprived of meaningful representation (see People v Pitt, 170 AD3d 1282, 1286 [2019], lv denied 33 NY3d 1072 [2019]; People v McCauley, 162 AD3d 1307, 1310-1311 [2018], lv denied 32 NY3d 939 [2018]).
Garry, P.J., Egan Jr., Lynch and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant does not challenge the verdict on the count of unlawfully dealing with a child in the first degree.

Footnote 2: Reverse extrapolation is sometimes called retrograde extrapolation.