People v Sumpter (2021 NY Slip Op 01158)





People v Sumpter


2021 NY Slip Op 01158


Decided on February 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021

110190

[*1]The People of the State of New York, Respondent,
v
Shamar J. Sumpter, Appellant.

Calendar Date: January 14, 2021

Before: Garry, P.J., Lynch, Clark, Aarons and Colangelo, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
Chad W. Brown, District Attorney, Johnstown (Amanda M. Nellis of counsel), for respondent.



Lynch, J.
Appeal from a judgment of the County Court of Fulton County (Sira, J.), rendered December 20, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree.
In November 2016, defendant was charged by indictment with two counts each of criminal sale of a controlled substance in the third degree (counts 1 and 3) and criminal possession of a controlled substance in the third degree (counts 2 and 4) in connection with two controlled-buy operations that occurred on August 15, 2016 and November 2, 2016. In July 2017, defendant was charged in another four-count indictment with the same crimes (two counts each) pertaining to two additional controlled-buy operations that occurred on July 20, 2017 and July 25, 2017.
A trial on the November 2016 indictment ended in a mistrial after the parties were unable to select a full jury. The People thereafter moved to consolidate the indictments for trial and County Court granted the motion. A jury trial ensued on the consolidated indictments. Following the close of the People's case-in-chief, County Court granted defendant's motion to dismiss the charges set forth in the July 2017 indictment, but otherwise denied defendant's motion as it pertained to the charges set forth in the November 2016 indictment. Defendant was convicted of counts 1 and 2 of the November 2016 indictment pertaining to the August 15, 2016 controlled-buy, but acquitted of counts 3 and 4 pertaining to the November 2, 2016 transaction. He was sentenced, as a second felony offender, to a prison term of six years followed by three years of postrelease supervision on each conviction, the sentences to run concurrently. Defendant appeals.
Defendant contends that the verdict is against the weight of the evidence because no witness actually observed him sell or possess narcotics. We disagree. "'A weight of the evidence review requires this Court to first determine whether, based on all the credible evidence, a different finding would not have been unreasonable. Where a different finding would not have been unreasonable, this Court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence'" (People v Garrand, 189 AD3d 1763, 1764 [2020], quoting People v Stover, 178 AD3d 1138, 1139 [2019], lv denied 34 NY3d 1163 [2020]). As relevant here, a person is guilty of criminal possession of a controlled substance in the third degree when he or she knowingly and unlawfully possesses a narcotic drug with intent to sell it (see Penal Law § 220.16 [1]). A person is guilty of criminal sale of a controlled substance in the third degree when he or she knowingly and unlawfully sells said drug (see Penal Law § 220.39 [1]).
At trial, Brad Schaffer, a sergeant with the [*2]City of Gloversville Police Department, testified that he was involved in the August 15, 2016 controlled-buy operation. Schaffer met with a confidential informant (hereinafter CI No. 1) on that date, who agreed to cooperate in the operation in exchange for consideration in a pending criminal case regarding cocaine possession. CI No. 1 was fitted with a wire, provided with $50 and directed to place a phone call to defendant for the purpose of arranging the purchase of narcotics. A detective conducted a thorough search of CI No. 1's person and vehicle before she proceeded to the meet-up location, which yielded no illicit substances. The People entered into evidence the audio recording from CI No. 1's call to defendant prior to the buy, on which she stated that she was placing a call to "Shay" and he answered in the affirmative when she asked if $50 would be "okay" for the transaction. CI No. 1 then proceeded to drive to the original meet-up location, but received a phone call from defendant asking to switch locations and to meet at a Cumberland Farms in the City of Gloversville, Fulton County. Schaffer followed CI No. 1 to that location and parked across the street from the Cumberland Farms. Schaffer testified that, upon completing the transaction, CI No. 1 returned to his vehicle with a Styrofoam cup and advised that "the item [she] had purchased was inside of it." Upon looking inside of the cup, Schaeffer saw "[o]ne single corner tie style bag" that contained a substance that was later identified as cocaine. Schaffer noted that CI No. 1 did not return with any of the money that he had provided to her for the transaction, and she was searched again thereafter.
The People also elicited testimony from Michal Calbet, a retired police detective, who confirmed that defendant was the subject of the August 2016 operation. Calbet, who parked across the street from the Cumberland Farms, used a camera with a telephoto lens to view the transaction, testifying that he saw CI No. 1 and defendant walk into the store together. Calbet also watched the surveillance video from the transaction, noting that, although it did not show defendant place anything into a cup, it showed him hand a coffee cup to CI No. 1, who then walked out of the store without paying for anything.
CI No. 1 also testified, confirming that she was thoroughly searched prior to the transaction and was given money for the purchase. She testified that, upon entering the Cumberland Farms with defendant, he went to the coffee section and then passed her a Styrofoam cup in exchange for money. She then exited the store, entered her vehicle, placed the coffee cup on the passenger seat, proceeded back to the designated meet-up spot and handed the cup to the detectives. On cross-examination, CI No. 1 acknowledged that she has struggled with an addiction to crack cocaine and that she had used crack "once or twice" while working for the police. However, she maintained that she was in rehab [*3]at the time of her testimony and was not currently using crack. The surveillance footage from the August 2016 Cumberland Farms transaction was also entered into evidence, which corroborated CI No. 1's testimony.
Although a different verdict would not have been unreasonable, when viewing the evidence in a neutral light and according deference to the jury's credibility determinations, we conclude that the verdict is not against the weight of the evidence (see People v Small, 174 AD3d 1130, 1132 [2019], lv denied 34 NY3d 954 [2019]; People v Morris, 165 AD3d 1489, 1490 [2018], lv denied 32 NY3d 1207 [2019]; People v Miller, 160 AD3d 1040, 1043 [2018], lv denied 32 NY3d 939 [2018]). The key dispute is whether defendant placed the cocaine in the cup that he handed to CI No. 1. Although no witness testified that defendant was observed doing so, the circumstantial evidence amply supports that inference. Although defendant contends that CI No. 1 was not credible given her admission to prior drug use and her agreement to participate in the operation to benefit her own criminal case, her credibility was "fully vetted" at trial and was consistent with testimony of law enforcement and the images captured on the surveillance video (People v Wilson, 100 AD3d 1045, 1046 [2012], lv denied 22 NY3d 998 [2013]; see People v Morris, 165 AD3d at 1490; People v Peterkin, 159 AD3d 1196, 1197 [2018], lv denied 31 NY3d 1151 [2018]).
We are also unpersuaded by defendant's contention that County Court abused its discretion in consolidating the indictments for trial. "When two or more indictments against the same defendant . . . charge different offenses of a kind that are joinable in a single indictment pursuant to [CPL 200.20 (2)], the court may, upon application of either the [P]eople or a defendant, order that such indictments be consolidated" (CPL 200.20 [4]). Separate offenses are joinable under CPL 200.20 (2) (c) when, "[e]ven though based upon different criminal transactions, . . . such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law." When offenses are joinable under that subsection, "determination of a consolidation application is discretionary, with the court weighing 'the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage'" (People v Martinez, 165 AD3d 1288, 1290 [2018], quoting People v Lane, 56 NY2d 1, 8 [1982]; see CPL 200.20 [5]; People v Piznarski, 113 AD3d 166, 180 [2013], lv denied 23 NY3d 1041 [2014]).
Here, the facts underlying both indictments were "separately presented, uncomplicated and easily segregable in the jury's mind [and t]here was no substantial difference in the quantum of proof at trial" (People v Jackson, 187 AD2d 869, 870 [1992] [internal quotation marks, brackets and citation omitted]). In our view, County Court acted within its discretion by consolidating the indictments[*4], and any potential prejudice to defendant was dissipated by the court's instruction to the jury that evidence of the charges contained in the July 2017 indictment was "not to be considered in [the jury's] deliberations as evidence of guilt for counts [1] through [4]" of the November 2016 indictment. The jury's decision to acquit defendant of two of the charges in the November 2016 indictment further demonstrated that it was able "to independently evaluate the evidence presented with respect to each separate incident" (People v Simpkins, 110 AD2d 790, 792 [1985], lv denied 66 NY2d 618 [1985]; see People v Jackson, 187 AD2d at 870).
Defendant's contention that the People committed a Brady violation by failing to promptly disclose that a second confidential informant who engaged in the July 2017 controlled buys (hereinafter CI No. 2) would not be testifying at trial is, as conceded by defendant, unpreserved for review (see People v Fort, 146 AD3d 1017, 1019 [2017], lv denied 29 NY3d 1031 [2017]; People v Lundy, 48 AD3d 1046, 1047 [2008], lv denied 10 NY3d 936 [2008]). In any event, to the extent that defendant makes this argument in the context of a claim for ineffective assistance of counsel, it is unavailing. Defendant argues that the People's delay in disclosing this information deprived him of the opportunity to move to sever the indictments and that his counsel was ineffective for failing to do so. We are unpersuaded. The witness attendance issue came to light during the fourth day of trial, when County Court addressed the People's material witness application as to CI No. 2. The record shows that this witness had been subpoenaed to testify on October 17, 2017, the second day of trial. The prosecutor explained that, three days before the trial began, she personally spoke to CI No. 2 and emphasized her obligation to testify, albeit the witness responded that she would not appear. When the witness failed to attend as scheduled, the People promptly applied for a material witness order (see CPL 620.10). The court granted the application and issued an arrest warrant for CI No. 2 on October 19, 2017. Ultimately, the witness did not testify. Contrary to defendant's argument, this scenario does not present a Brady violation. Either the People or a defendant may seek a material witness order to secure the attendance of a recalcitrant witness and neither party is entitled to notice when such an application is made by the opposing party (see People v Fermin, 150 AD3d 876, 878 [2017], lv denied 30 NY3d 1060 [2017]). As the People subpoenaed the witness, spoke to her directly and promptly moved to compel her attendance, there was no impropriety on their part. Moreover, County Court specifically directed the jury that it was not to use evidence of the controlled buys performed by CI No. 2 in its deliberations on the counts charged in the November 2016 indictment. In these circumstances, the People's ostensible delay in disclosure did not prejudice [*5]defendant, and counsel's failure to request a discretionary severance pursuant to CPL 200.20 (3) did not deprive him of a fair trial (see People v Alvarez, 251 AD2d 265, 265 [1998], lv denied 92 NY2d 980 [1998]).
We reject defendant's contention that the Cumberland Farms surveillance video was not properly authenticated and, therefore, should not have been admitted into evidence. "The decision to admit videotape evidence rests within the sound discretion of the trial court and will not be disturbed absent a lack of foundation for its introduction or a demonstrated abuse of the court's discretion" (People v Sanders, 185 AD3d 1280, 1283 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1115 [2020]). "A videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted" (People v Edmonds, 165 AD3d 1494, 1497 [2018] [internal quotation marks, brackets and citations omitted]; see People v Goldman, 35 NY3d 582, 595 [2020]; People v Price, 29 NY3d 472, 476 [2017]). "Evidence establishing the chain of custody of the videotape may additionally buttress its authenticity and integrity, and even allow for acceptable inferences of reasonable accuracy and freedom from tampering" (People v Patterson, 93 NY2d 80, 84 [1999] [citation omitted]).
The store manager of the subject Cumberland Farms explained that the store maintains a video surveillance system called "Raven" that stores surveillance footage for up to six months. The manager testified that, when she was contacted by police about the August 2016 controlled buy, she typed the relevant date and time into the Raven database, obtained the surveillance video pertaining to the transaction and downloaded it onto a DVD. When shown a copy of People's exhibit No. 27 — the tape that was ultimately played for the jury — the manager confirmed that it was the DVD that she had handed over to police pertaining to the August 2016 transaction. She affirmed that she had recently reviewed the DVD's contents and that it was "exactly what [she had] downloaded for [the] Gloversville Police Department." As the store manager's testimony supported the conclusion that the surveillance video accurately represented the events depicted thereon, the video was properly authenticated and entered into evidence (see People v Patterson, 93 NY2d at 84; People v Sanders, 185 AD3d at 1283-1284; People v Oquendo, 152 AD3d 1220, 1221 [2017], lv denied 30 NY3d 982 [2017]).
We further reject defendant's contention that the sentence is harsh and excessive. The fact that defendant was offered a plea deal that would have secured a more favorable sentence than the one ultimately imposed after trial does not establish that he was penalized for exercising his right to trial (see People v Pena, 50 NY2d 400, 412 [1980], cert denied 449 US 1087 [1981]; People v Cummings, [*6]188 AD3d 1449, 1454 [2020]). Defendant is a multistate offender with a lengthy criminal history dating back to 2003. On this record, we find no abuse of discretion or extraordinary circumstances that would justify a modification of the sentence in the interest of justice (see People v Cummings, 188 AD3d at 1454; People v Horton, 173 AD3d 1338, 1342 [2019], lv denied 34 NY3d 933 [2019]).
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.