People v Lafountain (2021 NY Slip Op 06885)





People v Lafountain


2021 NY Slip Op 06885


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

110951
[*1]The People of the State of New York, Respondent,
v
George Lafountain, Appellant.

Calendar Date:October 12, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Angela Kelley, Albany, for appellant.
Craig P. Carriero, District Attorney, Malone (Jennifer M. Hollis of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Franklin County (Champagne, J.), rendered December 10, 2018, upon a verdict convicting defendant of the crime of criminal trespass in the second degree.
Defendant was charged by indictment with two counts of burglary in the second degree stemming from an altercation he had with the victim and her boyfriend on September 24, 2017 in a garage attached to the victim's residence. Allegedly, defendant unlawfully entered the garage, brandishing several weapons and demanding the return of money that he had paid for a vehicle that one of the boyfriend's family members sold to him. Following a jury trial, defendant was acquitted of both counts of burglary in the second degree but was found guilty of one count of criminal trespass in the second degree as a lesser included offense. Defendant was sentenced, as a second felony offender, to 365 days in jail for the misdemeanor. Defendant appeals.
Defendant contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. Specifically, defendant argues that while the victim, her boyfriend and his friend were all present when the trespass allegedly occurred, only the victim and the friend testified at trial. Although they both testified that they did not invite him into the dwelling, defendant contends that it was inappropriate to assume that the boyfriend — the witness who did not testify at trial — did not invite him into the dwelling. Defendant further asserts that the absence of the boyfriend's testimony, coupled with the fact that the People failed to produce certain text messages at trial, supports his contention that the verdict was legally insufficient and against the weight of the evidence.
"When reviewing the legal sufficiency of the evidence, this Court must view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crimes charged. In contrast, when conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Agudio, 194 AD3d 1270, 1271 [2021] [internal quotation marks and citations omitted]; see People v Shabazz, 177 AD3d 1170, 1171 [2019]). "A person is guilty of criminal trespass in the second degree when . . . he or she knowingly enters or remains unlawfully in a dwelling" (Penal Law § 140.15 [1]).
Here, the boyfriend's mother testified that defendant was [*2]a friend of her son and that he had purchased a car from a family member. On September 24, 2017, she received several text messages and telephone calls from defendant demanding his money back for the car as it did not run. According to the boyfriend's mother, in these communications, defendant threatened her son's life by saying that "the next time that [you] see [your] son he [will] be in a body bag." Both the victim and her boyfriend's friend testified that at approximately 9:00 p.m. on September 24, 2017, a car pulled into the victim's driveway and defendant appeared and stood at the garage door. The boyfriend told defendant not to come into the garage. Despite not having permission to enter, defendant opened the garage door and came inside. Shortly after defendant entered the garage, he pulled what appeared to be a gun and then a boxcutter out of his pants and pointed both towards the victim and the friend. The victim further testified that earlier in the day, her boyfriend had received several text messages from defendant asking for his money back for a car that he had bought from her boyfriend's family. Prior to arriving at her house, the victim had texted defendant and told him he was not getting any money back.
Defendant's mother-in-law testified that, on the night of the incident, she gave defendant a ride to the victim's house. She had heard defendant talking on the phone about trying to get money back from the boyfriend's mother and thought he was going to the victim's house to get the money. Defendant's mother-in-law testified that she remained in the vehicle and watched defendant walk toward the garage but did not see him enter the garage. Shortly thereafter, the victim and her mother came out of the garage and screamed at defendant's mother-in-law stating that they were going to call the police, prompting her to honk the horn for defendant to leave. She stated that it appeared that defendant and the boyfriend were hugging by the garage door, but she could not tell if they were inside or outside the garage because she was parked at the end of the driveway.
"Viewed in the light most favorable to the People, such evidence was legally sufficient to establish that defendant knowingly and unlawfully entered a dwelling" (People v Degnan, 168 AD3d 1224, 1225 [2019]; see People v Jackson, 38 AD3d 1052, 1053-1054 [2007], lv denied 8 NY3d 986 [2007]). As to the weight of the evidence, the testimony of the victim established defendant's unlawful entry, and her testimony was corroborated by two witnesses. The testimony of defendant's mother-in-law failed to refute this. In view of this evidence, we find that a different verdict would have indeed been unreasonable "and, as such, defendant's claim that the verdict is against the weight of the evidence is rejected outright" (People v Cloonan, 166 AD3d 1063, 1065 [2018], lv denied 35 NY3d 941 [2020]; see People v Cooper, ___ AD3d ___, ___, 2021 NY Slip Op 06005, *3 [2021]).
Defendant [*3]asserts that the People violated County Court's pretrial Molineux ruling during their opening statement by changing the substance of the threat allegedly made by defendant to the boyfriend's mother. Specifically, defendant argues that the threat changed from if defendant did not get his money back, he did "not know what would happen to her son" to "[her] son [was] going to be in a body bag." It is well settled that "[t]he Molineux rule requires that evidence of a defendant's prior bad acts or crimes be excluded unless it is probative of a material issue other than criminal propensity and its probative value outweighs the risk of prejudice to the defendant" (People v Williams, 156 AD3d 1224, 1229 [2017] [internal quotation marks and citation omitted], lv denied 31 NY3d 1018 [2018]; see People v Knox, 167 AD3d 1324, 1325-1326 [2018], lv denied 33 NY3d 950 [2019]). Such evidence may be admitted if it falls "within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Anthony, 152 AD3d 1048, 1051 [2017] [internal quotation marks and citations omitted], lvs denied 30 NY3d 978, 981 [2017]; see People v Gannon, 174 AD3d 1054, 1058 [2019], lv denied 34 NY3d 980 [2019]).
Here, evidence of the text messages and telephone calls containing the threat was inextricably interwoven with the crimes with which defendant was charged and provided necessary background information regarding the nature of defendant's relationship with the victim and the witnesses and his motive for entering the garage and brandishing the gun and box cutter (see People v Young, 190 AD3d 1087, 1092-1093 [2021], lvs denied 36 NY3d 1100, 1102 [2021]). The exact wording of the threat did not alter the substance of the message or that defendant's text messages, telephone calls and threat fell within the Molineux exceptions, and, accordingly, we discern no error in the admission of the proffered evidence (see People v Anthony, 152 AD3d at 1051). To the extent that defendant now asserts a Brady violation for failing to promptly disclose the exact wording of the threat, this contention is presented for the first time on appeal and is, therefore, unpreserved for our review (see People v Sumpter, 191 AD3d 1160, 1164 [2021], lv denied 37 NY3d 968 [2021]; People v Fort, 146 AD3d 1017, 1019 [2017], lv denied 29 NY3d 1031 [2017]).
Defendant next contends that County Court committed reversible error when it denied defendant's request for a missing witness charge relative to the boyfriend's absence at trial. Defendant argues that the boyfriend's testimony was highly relevant to defendant's state of mind and would have shed more light on the circumstances surrounding the incident. Generally, a missing witness charge "allows a jury to draw an unfavorable inference based on a party's failure to [*4]call a witness who would normally be expected to support that party's version of events" (People v Smith, 33 NY3d 454, 458 [2019] [internal quotation marks and citation omitted]; see People v Ferguson, 193 AD3d 1253, 1258 [2021], lv denied 37 NY3d 964 [2021]). "To warrant a missing witness charge, the proponent of the charge must establish that (1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the control of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (People v Brown, 139 AD3d 1178, 1179 [2016] [internal quotation marks and citations omitted]; accord People v Martinez, 166 AD3d 1292, 1296 [2018], lv denied 32 NY3d 1207 [2019]).
County Court properly denied defendant's application for a missing witness charge, as testimony from the boyfriend would have been cumulative to the testimony given by the victim and the friend. The victim, the boyfriend and his friend all observed the incident, including defendant's appearance at the dwelling, his entrance into the garage and his brandishing of the gun and box cutter. Defendant's assertion as to how the boyfriend may have testified is pure speculation (see People v Ferguson, 193 AD3d at 1259; People v Brown, 139 AD3d at 1179).
Defendant additionally argues that he was denied the effective assistance of counsel due to counsel's failure to (1) object to hearsay, prejudicial and improper testimony, (2) impeach the victim's testimony due to an inconsistent statement, and (3) call additional witnesses that could have cast further doubt on the witness's version of events. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Forney, 183 AD3d 1113, 1116 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1065 [2020]; see People v Santana, 179 AD3d 1299, 1302 [2020], lv denied 35 NY3d 973 [2020]). "This standard is not amenable to precise demarcation and necessarily hinges upon the facts and circumstances of each particular case. A reviewing court must avoid confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. In short, the [NY] Constitution guarantees a defendant a fair trial, not a perfect one" (People v Porter, 184 AD3d 1014, 1019 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1069 [2020]).
As to defense counsel's alleged failure to object to certain aspects of the victim's testimony, because the objections "would have had little or no chance of success, defendant's ineffective assistance claim is unavailing" in this regard (People v Terry, 196 [*5]AD3d 840, 847 [2021] [internal quotation marks and citation omitted], lvs denied 37 NY3d 1027, 1030 [2021]). Moreover, defense counsel did lodge several objections to the testimony. Regarding defendant's contention that counsel failed to successfully impeach the victim, "[d]efendant was not deprived of effective assistance by his counsel's failure to impeach [the victim] for [a] minor and immaterial inconsistenc[y] in [her] testimony" (People v Cox, 129 AD3d 1210, 1215 [2015], lv denied 26 NY3d 966 [2015]). Pertaining to defendant's argument that counsel failed to call certain additional witnesses, this concerns matters that are largely outside of the record and are therefore more properly pursued in a CPL article 440 motion (see People v Williams, 184 AD3d 1010, 1013-1014 [2020], lv denied 35 NY3d 1097 [2020]). Additionally, a strategy can be found in counsel declining to call law enforcement officers who conducted the investigation of the incident, as the witnesses would be subject to cross-examination on points likely unfavorable to defendant, and this could have interfered with defendant's strategy of attacking the credibility of both the victim and the boyfriend's mother (see People v Knapp, 138 AD3d 1157, 1158-1159 [2016]). Overall, the record reflects that prior to trial, defense counsel engaged in appropriate motion practice and filed an application for a missing witness charge. At trial, counsel made appropriate opening and closing statements, raised numerous objections, engaged in meaningful cross-examination of witnesses and was successful in acquitting defendant of both felony counts. In these circumstances, we cannot conclude that defendant was deprived of meaningful representation (see People v Porter, 184 AD3d at 1019; People v Forney, 183 AD3d at 1118).
"[D]efendant's challenge to County Court's Sandoval compromise is unpreserved given his failure to object to the ruling prior to the close of the hearing" (People v Shackelton, 177 AD3d 1163, 1166 [2019], lv denied 34 NY3d 1162 [2020]; see People v Pittman, 160 AD3d 1130, 1130 [2018], lv denied 31 NY3d 1151 [2018]). Likewise, his best evidence argument is unpreserved since no objections were made when either the victim or the mother testified to the text messages (see People v Lofton, 226 AD2d 1082, 1082 [1996], lv denied 88 NY2d 1022 [1996]).
Garry, P.J., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.