People v Santiago (2022 NY Slip Op 04196)

People v Santiago

2022 NY Slip Op 04196

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

112864
[*1]The People of the State of New York, Respondent,
v
Emmanuel Santiago, Appellant.

Calendar Date:June 1, 2022

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Steven M. Sharp, Albany, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered June 11, 2021 in Albany County, upon a verdict convicting defendant of the crime of making a terroristic threat.
Defendant was charged by indictment with one count of making a terroristic threat. Following a jury trial, he was found guilty as charged. Supreme Court sentenced defendant, as a second felony offender, to a prison term of five years followed by five years of postrelease supervision. Defendant appeals.
Defendant contends that his conviction is not supported by legally sufficient evidence and is against the weight of the evidence. Initially, defendant's legal sufficiency challenge is preserved only to the extent that he argues that the People failed to prove his identity as the perpetrator (see People v Taylor, 196 AD3d 851, 852 [2021], lvs denied 37 NY3d 1025, 1030 [2021]; People v Iovino, 149 AD3d 1350, 1351 [2017], lv denied 30 NY3d 950 [2017]). "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Campbell, 196 AD3d 834, 835 [2021] [internal quotation marks and citations omitted], lvs denied 37 NY3d 1025 [2021]; see People v Lafountain, 200 AD3d 1211, 1212 [2021], lv denied 38 NY3d 951 [2022]). "In contrast, when undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Sweet, 200 AD3d 1315, 1316 [2021] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 930 [2022]; see People v Lancaster, 200 AD3d 1352, 1353 [2021], lv denied 38 NY3d 951 [2022]).
Relevantly, "[a] person is guilty of making a terroristic threat when[,] with intent to . . . affect the conduct of a unit of government by murder, . . . he or she threatens to commit
. . . a specified offense and thereby causes a reasonable expectation or fear of the imminent commission of such offense" (Penal Law § 490.20 [1]). Penal Law article 490 was enacted following the September 11, 2001 attacks and was "specifically designed to combat the evils of terrorism" (People v Richardson, 167 AD3d 1064, 1066 [2018] [internal quotation marks and citation omitted]). Accordingly, "[t]he concept of terrorism has a unique meaning and its implications risk being trivialized if the terminology is applied loosely in situations that do not match our collective understanding of what constitutes a terrorist act" (id. at 1066-1067 [internal quotation marks and citation omitted]; see People [*2]v Kaplan, 168 AD3d 1229, 1230-1231 [2019], lv denied 33 NY3d 1032 [2019]; People v Hulsen, 150 AD3d 1261, 1263 [2017], lv denied 30 NY3d 950 [2017]).
At trial, the People produced testimony from three investigators from the Department of Corrections and Community Supervision. The first investigator testified that he received a complaint over the telephone on August 29, 2019 from someone who identified himself by defendant's name and provided a phone number. As soon as the first investigator picked up the phone, the caller was already speaking and said, "I'm going to blow an officer's head off." The first investigator asked the caller if that was a threat and the caller replied, "it's not a threat, it's a promise." The first investigator learned that the caller was concerned that his brother, an incarcerated individual, was being harassed by correction officers. The caller stated that "if they touch my brother, I'm gonna blow an officer's head off. They don't know who they're messing with. I don't care if I get in trouble." The caller provided the brother's Department Identification Number (hereinafter DIN) and the first investigator was able to confirm that a person with the brother's name was assigned that DIN. The first investigator sent a complaint with this threat to his supervisor. The first investigator did not contact anyone at the threatened correctional facility to warn the personnel there or issue a notice to police officers to be aware of this caller.
The supervisor, a senior investigator, testified that he learned of the threat on September 3, 2019 following his return from a holiday weekend. The supervisor indicated that he was not notified about the threat complaint prior to this date. The supervisor confirmed that the incarcerated individual identified in the call had a brother with defendant's name and that he had listed defendant as an emergency contact with the same phone number that had made the original call. The supervisor called this number and the male who answered the phone confirmed that he had defendant's name. The supervisor believed this to be the caller who spoke to the first investigator, although he could not confirm this with certainty. According to the supervisor, the caller "became very belligerent and upset about his brother being harassed and mistreated." The caller indicated that he had previously been incarcerated, was aware of how incarcerated individuals were treated and provided his former DIN. The supervisor asked the caller about the threat and the caller replied, "I didn't threaten anyone. It's a promise. If they mess with my brother, I'm going to go up there and violate them." After this phone call, the supervisor assigned the case to a second investigator. The supervisor did not issue any warnings based on this threat. Although the supervisor stated that it was generally the responsibility of the person who received the initial call to issue such warnings, the supervisor did not [*3]ensure that this was done. The second investigator met with defendant as part of the investigation and was the only witness to identify defendant at trial. During the second investigator's meeting with defendant, he provided the same phone number that had been used to place the initial call. The second investigator testified that a bulletin for officer safety was eventually put out.[FN1]
The People presented legally sufficient evidence to prove defendant's identity as the caller. Although there was no direct evidence establishing defendant's identity, the evidence did establish that the caller identified himself by defendant's name, called from a phone number associated with defendant and accurately provided the DIN of himself and his brother. Viewing these facts in the light most favorable to the People, there is a valid line of reasoning and permissible inferences to conclude that defendant was the caller (see People v Taylor, 196 AD3d at 853; People v Marryshow, 162 AD3d 1313, 1317 [2018]).
However, we find that the evidence fails to establish that defendant "cause[d] a reasonable expectation or fear of the imminent commission" of an offense under the factual circumstance presented here (Penal Law § 490.20 [1]). Neither the first investigator nor the supervisor took any actions to warn the correctional facility or any other agency or individuals of the threat. While a notice was eventually issued, this was not done until well after the initial threat was made. None of the witnesses provided any testimony that they or anyone else had a reasonable expectation or fear that the threat would be imminently carried out, nor did their actions indicate any such belief. Based on the foregoing, the verdict is against the weight of the evidence (see Penal Law § 490.20 [1]; People v Hulsen, 150 AD3d at 1263; cf. People v DeBlasio, 190 AD3d 595, 595 [2021]; People v Kaplan, 168 AD3d at 1230-1231; compare People v Richardson, 167 AD3d at 1066; People v Rizvi, 126 AD3d 1172, 1174-1175 [2015], lv denied 25 NY3d 1076 [2015]; People v Allen, 66 Misc 3d 913, 916-917 [Orange County Ct 2020]; People v Bernard, 60 Misc 3d 676, 679-680 [Gloversville City Ct 2018]). Accordingly, defendant's conviction must be reversed. In light of this determination, defendant's remaining contentions have been rendered academic.
Clark, J.P., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment is reversed, on the facts, and indictment dismissed.

Footnotes

Footnote 1: The second investigator testified that this bulletin was put out "[s]hortly after [defendant] was charged" and that he believed this was "sometime in October [2019]." However, defendant was not charged until January 2020.