People v Lorenz (2022 NY Slip Op 06837)

People v Lorenz

2022 NY Slip Op 06837

Decided on December 1, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 1, 2022

112219
[*1]The People of the State of New York, Respondent,
v
Travis Lorenz, Appellant.

Calendar Date:October 14, 2022

Before:Garry, P.J., Egan Jr., Clark, Ceresia and Fisher, JJ.

G. Scott Walling, Slingerlands, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (Kathleen B. Hogan, J.), rendered September 12, 2019 in Schenectady County, upon a verdict convicting defendant of the crime of arson in the third degree.
Defendant was charged by indictment with arson in the third degree, stemming from an incident where he set fire to a vehicle belonging to his former girlfriend (hereinafter the victim). Following a jury trial, defendant was found guilty as charged. Defendant was sentenced, as an acknowledged second felony offender, to an indeterminate prison term of 5 to 10 years and ordered to pay restitution. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence in that the People failed to prove his identity as the perpetrator. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Paul, 202 AD3d 1203, 1204-1205 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1034 [2022]). "In contrast, when undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Colter, 206 AD3d 1371, 1373 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 1149 [2022]). As relevant here, "[a] person is guilty of arson in the third degree when he [or she] intentionally damages a . . . motor vehicle by starting a fire or causing an explosion" (Penal Law § 150.10 [1]).
The trial testimony established that the victim and defendant were formerly involved in an intimate relationship and lived together. On October 29, 2018 at around 9:30 p.m., the victim's neighbor notified her that the victim's vehicle was on fire. The victim testified that she observed a "rag stuffed in the gas tank" and that the back of the vehicle was on fire and burning. Using video surveillance footage, a fire investigator testified that he identified a possible suspect "standing in close proximity" to the driver's side of the victim's vehicle when "flashes of light" were seen before the fire started. The suspect wore dark clothes, silver headphones, and a red hat or bandana. The fire investigator tracked the suspect to a certain address by using video surveillance footage collected from multiple cameras owned by businesses or the County of Schenectady.
The victim subsequently identified defendant as the suspect based on his dark clothing, bandana [*2]and gait. She testified that defendant "always wore bandanas" and "all black," and she confirmed his residence being the address that the fire investigator tracked him to using the surveillance footage. A search warrant executed at this address resulted in the discovery of a red bandana, silver headphones, black sneakers and black hooded sweatshirts in defendant's bedroom. Thereafter, the victim testified that she had a text message conversation with defendant on New Year's Eve 2019. During the course of this conversation, defendant sent her a message stating "present this to the courtroom though you snitch a** n*****" and asked to meet in person to "settle this as adults." The victim responded that "you did this, now live with it," and defendant answered "yeah."
Viewing the evidence in a light most favorable to the People, we conclude that there was a valid line of reasoning and permissible inferences which could lead a rational person to conclude that defendant was the individual depicted in the video surveillance footage and identified by the victim (see People v Johnson, 197 AD3d 61, 68-69 [3d Dept 2021]; People v Baldwin, 173 AD3d 1748, 1748-1749 [4th Dept 2019], lv denied 34 NY3d 928 [2019]). Relying on her experience based on their intimate relationship in the months prior to the incident, the victim identified defendant by his propensity to wear certain articles of clothing and by his unique gait, as well as his residence, which was tracked by the fire investigator. Further coupled with the discoveries made during the execution of the search warrant of his residence and the text message conversation between the victim and defendant, this evidence renders the verdict legally sufficient to support defendant's conviction of arson in the third degree beyond a reasonable doubt (see People v Johnson, 197 AD3d at 68-69; People v Agudio, 194 AD3d 1270, 1271-1275 [3d Dept 2021]).
As to the weight of the evidence, a different verdict would not have been unreasonable because the jury could have discredited the victim's identification of defendant. The jury could have also found the instances where the suspect "goes out of view momentarily" in the surveillance footage as he walked down various streets to and from the scene of the crime to have been too significant to positively identify him as the perpetrator. However, "any inconsistences and gaps in the testimony posed credibility issues for the jury" (People v Marryshow, 162 AD3d 1313, 1317 [3d Dept 2018]). When viewing the evidence in a neutral light, further considering the multiple means by which defendant was identified in the record, we find that the jury's verdict is supported by the weight of the evidence (see People v Howard, 134 AD3d 1153, 1157 [3d Dept 2015], lv denied 27 NY3d 965 [2016]; People v Launder, 132 AD3d 1151, 1153 [3d Dept 2015], lv denied 27 NY3d 1153 [2016]).
Next, defendant contends that Supreme Court erred in admitting two exhibits containing video surveillance footage[*3], alleging that it was not sufficiently authenticated and lacked a proper foundation. We disagree. "A videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted" (People v Sumpter, 191 AD3d 1160, 1165 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 968 [2021]). Further, "[e]vidence establishing the chain of custody of the videotape may additionally buttress its authenticity and integrity, and even allow for acceptable inferences of reasonable accuracy and freedom from tampering" (id. [internal quotation marks and citations omitted]). "The decision to admit videotape evidence rests within the sound discretion of the trial court and will not be disturbed absent a lack of foundation for its introduction or a demonstrated abuse of the court's discretion" (People v Sanders, 185 AD3d 1280, 1283 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1115 [2020]).
The record discloses that the People presented testimony from a property manager, an investigator from the Schenectady County District Attorney's Office, and a fire investigator, each of whom averred they were sufficiently familiar with the operation and maintenance of the video surveillance system and their respective video files that were contained on either exhibit 3 [FN1] or exhibit 5 [FN2] (see People v Brown, 203 AD3d 666, 667 [1st Dept 2022], lv denied 38 NY3d 1132 [2022]). Inasmuch as these individuals further testified that the footage could not be altered, established the chain of custody for each video file and affirmed that they had reviewed their respective video files contained in the relevant exhibit — finding such video files to accurately represent the events depicted thereon — the surveillance footage was properly authenticated and admitted into evidence (see People v Sumpter, 191 AD3d at 1165; People v Sanders, 185 AD3d at 1283-1284). As a result of these findings, we also reject defendant's argument that certain still frame photographs presented in a collage to the jury during summation were improper, as each still frame was extracted from a properly admitted video and the prior witness testimony "was adequate to establish the authenticity and integrity of the video excerpt and still frame" (People v Williams, 184 AD3d 1010, 1012 [3d Dept 2020] [internal quotation marks and citation omitted], lv denied 35 NY3d 1097 [2020]).
Defendant next argues that Supreme Court erred in denying his request for a missing witness charge for two of the People's prospective witnesses — a friend and a former girlfriend. To establish the need for a missing witness charge, the proponent of the charge must demonstrate that "(1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the control of the party against [*4]whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (People v Lafountain, 200 AD3d 1211, 1215 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 951 [2022]; see People v Stokes, 141 AD3d 1032, 1034 [3d Dept 2016], lv denied 28 NY3d 1075 [2016]). The party opposing the charge can defeat the initial showing "by demonstrating, among other things, that the testimony would be cumulative to other evidence" (People v Smith, 33 NY3d 454, 458-459 [2019] [internal quotation marks and citation omitted]; see People v Ferguson, 193 AD3d 1253, 1259 [3d Dept 2021], lv denied 37 NY3d 964 [2021]).
Here, defendant failed to establish that the friend's testimony would have been anything more than speculative and conjecture (see People v Ferguson, 193 AD3d at 1259), and did not demonstrate whether the former girlfriend had knowledge material to the trial (see People v Lafountain, 200 AD3d at 1215). Nor, when considering the record before us, did defendant establish that the testimony from either witness would have been noncumulative (see People v Smith, 33 NY3d at 458-459; People v Stokes, 141 AD3d at 1034). Accordingly, Supreme Court properly denied defendant's application for a missing witness charge.
Defendant's remaining arguments do not warrant extended discussion. As to defendant's contention that he was denied a fair trial because the People elicited improper identification testimony based on "personal opinion," this argument is both unpreserved (see People v Johnson, 183 AD3d 77, 89 [3d Dept 2020], lv denied 35 NY3d 993 [2020]) and without merit (see People v Myrick, 135 AD3d 1069, 1075 n 2 [3d Dept 2016]; see also People v Reddick, 164 AD3d 526, 527 [2d Dept 2018], lv denied 32 NY3d 1114 [2018]). Defendant's arguments that he was denied effective assistance of counsel as it relates to various issues with the video surveillance footage are also without merit, as "counsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success" (People v LaDuke, 204 AD3d 1083, 1089 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 1072 [2022]). Further, when "evaluat[ing] the totality of counsel's representation, considering whether counsel made appropriate motions, set forth a cogent defense theory, interjected viable objections, conducted meaningful cross-examination, gave an effective summation and otherwise presented a zealous defense" (People v Forney, 183 AD3d 1113, 1116 [3d Dept 2020] [internal quotation marks and citation omitted], lv denied 35 NY3d 1065 [2020]), we cannot conclude that defendant was deprived of meaningful representation (see People v LaDuke, 204 AD3d at 1089; People v Lafountain, 200 AD3d at 1216-1217).
Finally, defendant's challenge to the sentence imposed upon his conviction as harsh and excessive [*5]is equally unavailing (see CPL 470.15 [6] [b]). For a second felony offender, arson in the third degree is punishable by an indeterminate sentence of imprisonment with a maximum term between 7 ½ and 15 years and a minimum term between 3 and 6 years (see Penal Law §§ 60.05 [6]; 70.06 [3] [c]). After considering defendant's prior criminal history, the instant offense and his subsequent text messages to the victim and social media posts referencing "snitches get stitches," Supreme Court sentenced defendant as a second felony offender to an indeterminate prison term of 5 to 10 years. Under these circumstances, we do not find the sentence imposed to be unduly harsh or severe so as to warrant a reduction in the interest of justice, and we decline defendant's invitation to do so (see People v Fullard, 207 AD3d 816, 818 [3d Dept 2022]; People v LaDuke, 204 AD3d at 1090). We have examined defendant's remaining contentions and find them without merit or rendered academic.
Garry, P.J., Egan Jr., Clark and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Exhibit 3 contains four files from the exterior of two apartment buildings that were managed by the same real estate company and authenticated by the property manager.

Footnote 2: Exhibit 5 contains one viewer file from multiple cameras maintained by the County of Schenectady, routinely accessed by the District Attorney's office and authenticated by the District Attorney investigator and the fire investigator.